—o-O-o—

## THE CITIZENS' MUTUAL LOAN AND ACCUMULATING FUND ASSOCIATION *vs.* WEBSTER and others.

By the articles of association of a mutual loan company, incorporated under the act of April 10, 1851, each member was to be entitled to the sum of $800, out of the funds of the association, at its termination, upon complying with the provisions of the articles by paying the monthly dues, &c. It was, however, provided, by another article, that this sum of $800, instead of being paid at the dissolution of the association, might, at the option of members, be obtained by them at an earlier period. As often as the funds of the association should amount to $800, that sum was to be put up to competition among the members, and the member offering the highest premium for it was to be entitled to it. But the member thus receiving the money was required to give security for the payment of his monthly dues during the residue of the existence of the association. The defendant, being the owner of two shares in the association, purchased two sums of $800 each, when thus put up at auction, at a premium of $258 per share, receiving only the sum of $542, in hand, on each share. He then gave to the association two bonds and mortgages, each conditioned for the payment of $14 per month, until the termination of the association, the same being the monthly dues and redemption fees on the two shares, and for the payment of all fines which should be charged against him. This sum of $14 was made up of the monthly dues of $3 per share which every member of the association was, by art. 10, bound

to pay, and $4 per share, being the interest on the nominal or par value of the share, at $800, for one month, at six per cent.

*Held* that the bonds and mortgages were not rendered usurious by charging interest upon the par value of the share instead of upon the sum of $542, which was actually advanced.

*Held also*, that this was not a contract which the court would refuse to enforce, on account of its oppressive and unconscientious character. .

THIS was an action for the foreclosure of two mortgages. The complaint alleged that the plaintiffs were a corporation duly incorporated pursuant to, and in accordance with, an act of the legislature, passed April 10, 1851, entitled "An act for the incorporation of Building, Mutual Loan, and Accumulating Fund Associations." That the defendant Epenetus Webster, for the purpose of securing the payment to the plaintiffs of the sum of $14 monthly, until the termination of their association, on the 21st day of October, 1852, executed and delivered to the plaintiffs a bond bearing date on that day, sealed with his seal, whereby he bound himself, his executors, &c., in the penalty of $3200, upon condition that the same should be void if the defendants should pay to the plaintiffs, their successors or assigns, the said sum of $14 per month during each and every month until the termination of the said association, of which he, the said Epenetus Webster, was a member, having signed the articles of association thereof; the said sum of $14 being the monthly-dues and redemption fees on two shares of the stock of said association, owned by him, and redeemed in manner prescribed by said articles ; and should also pay, or cause to be paid, all fines which should be charged against him, in accordance with the provisions of said articles of association, and should keep and perform all promises, agreements and engagements made and entered into by him with the said association by reason of being a member thereof; and should, in case of default in any of the above mentioned payments, or in the fulfillment and performance of any of the said agreements, at the option of the said obligees, their successors or assigns, forthwith pay to them, their successors or assigns, the full sum of $1600, to be by them held and appropriated, in manner follow-

ing, namely: 1st. To appropriate so much as should be necessary, from time to time, during the continuance of the said association, to pay and discharge the above mentioned payment of $14 to be made monthly as aforesaid, and all fines, penalties and moneys which should or might become due and payable by him, by reason of any thing in the said articles of association contained; and 2d. To repay and reimburse to him, the said obligor, the residue, if any there should be, after such appropriations and payments upon the termination aforementioned, together with lawful interest upon so much and such part of said sum of $1600 as should not have been so appropriated or paid for the periods the same should have been held by the said association and not so paid or appropriated. The plaintiffs further alleged, that the defendant Webster, for the purpose of securing the payment to the plaintiffs of the further sum of $14 monthly, until the termination of their association, on or about the 26th day of November, 1852, executed and delivered to the plaintiffs a certain other bond bearing date on that day, sealed with his seal, whereby he bound himself, his executors, &c., in the like penalty, for the payment of the said sum of $14 monthly, with the same penalties and conditions as in the bond before recited. That as collateral security for the payment of the indebtedness set forth in the first mentioned bond, the defendants Webster and Mary K. his wife, on the said 21st day of October, 1852, executed, duly acknowledged, and delivered to the said plaintiffs, a mortgage whereby they granted, bargained and sold, to the said plaintiffs, the premises described therein, with the appurtenances, with the usual power of sale, in case of the non-payment of the money secured. And that a similar mortgage was executed by Webster and wife to secure the payment of the bond secondly mentioned. The complaint further alleged that the said mortgages were duly recorded in the clerk's office of Queens county; and that the defendant Webster had failed to comply with the conditions of said bonds and mortgages, and of each of them, by omitting to pay the sum of $28, which became due on said bonds in the month of July, 1854, and in each and every month since; and that there

was due to the plaintiffs, to be appropriated as in said bonds and mortgages described, the sum of $3200, and that no proceedings had been had at law, or otherwise, for the recovery of the sums secured by the said bonds and mortgages, or either of them, or any part thereof. The plaintiffs therefore prayed for a decree of foreclosure and sale, and for a decree against Webster for the deficiency if any.

The defendant Webster, in his answer, alleged that the whole amount of money the plaintiffs loaned and advanced to him, and for which said bonds and mortgages were given to said plaintiffs, was the sum of $1972, and no other or further sum or sums. That on the first bond and mortgage, dated the 21st day of October, 1852, the sum of $1028 was loaned, which sum was advanced and loaned to him on the 21st day of October, 1852. That on the second bond and mortgage, dated the 26th day of November, the sum of $500 was loaned, on the 23d November, 1852, and the further sum of $444 on the 30th day of December, 1852. That each of said bonds and mortgages was nominally given to secure the payment of the sum of $1600, and was actually conditioned to pay monthly the sum of $7; $3 thereof called, in the articles of association of said corporation, monthly dues, and $4 a month for interest on said $1600, at six per cent, payable monthly; making on both bonds and mortgages, the sum of $14 per month. And the said defendant averred that the said bonds and mortgages were made and executed by him, and given and delivered to the plaintiffs to secure the loans aforesaid, and that the plaintiffs designed and intended thereby corruptly and fraudulently to secure to themselves usurious interest on said loans, or more than seven per cent for the use or forbearance of the sums so loaned to the defendant. And that said bonds and mortgages were taken and received knowingly and willfully, in direct violation of the statute of usury. And the defendant submitted that the plaintiffs were not protected from said usury by the exceptions contained in and by the statute under which the plaintiffs claimed they were incorporated.

And for a further defense, the defendant alleged that the

Citizens' Mutual Loan Association *v.* Webster.

said association was got up and organized for corrupt and fraudulent purposes and designs, intending by means thereof fraudulently and corruptly to take and receive usurious interest on loans made by the said association, and to enable the plaintiffs to take and receive a greater amount for interest than seven per cent for the use or forbearance of such sums loaned by said association ; and also for the purpose of enabling them, the said plaintiffs, wrongfully and fraudulently to levy and collect unreasonable and oppressive and ruinous fines, premiums and fees, as they are denominated in the articles of association ; and therefore the said association, and said bonds and mortgages were fraudulent and void. The defendant further alleged, that the tenth, eleventh and thirteenth articles of said association were in direct violation of the act under which the said association claimed to have become an incorporation ; that the monthly dues, fines, fees, premiums and interest, in said articles mentioned, were oppressive, unjust, fraudulent and void, and contrary to, and in violation of, the policy of the laws of the state ; and that the defendant did not know, and was wholly ignorant of the facts and consequences, and the amount of the said monthly dues, fines, fees, premiums and interest, that under said articles of association could, might and were, from time to time, charged to and collected of him ; and the defendant averred that he never intended to become liable to the same, and never would have become a member of said association, had he been aware of the full extent of the claims that could or would be made by said association, of and upon him.

The action was tried by the court without a jury.

*Foster & Thompson*, for the plaintiffs.

*Loomis & Hayner*, for the defendant.

BIRDSEYE, J. Two objections are made to the validity of the bonds and mortgages in suit, and to their enforcement in this action. First. That they are usurious and void. Second. If not void, that they are evidence of a contract so unconscionable, oppressive and harsh in character, that the court must

presume that the defendant could not have assented to it, with a knowledge and understanding of its exactions.

As to the usury. Upon an examination of the bond and mortgage, and the articles of association of the plaintiffs therein referred to, it appears that the security is given not for the payment of the principal sum mentioned in the bond, but for the payment of the monthly dues and redemption fees on two shares of the stock of the association owned by the defendant, and redeemed by him, and of fines charged against him under those articles. These payments are to be made only " until the termination of the said association." The duration of the association is uncertain. It will continue till a fund has been accumulated, sufficient to pay to every holder of unredeemed shares, the nominal or par value of the share, being the sum of $800. Whether the payments required to be made by this bond, in order to prevent forfeiture, will exceed the principal and legal interest of the amount advanced to the defendant, will depend upon matters not brought before the court either upon the pleadings or the proofs. If the principal were payable absolutely, there could be no doubt of the usury. But it is not. And even when the mortgage has been foreclosed, and the moneys mentioned therein collected, they are to be applied only to the satisfaction of the dues, fees and fines, and the surplus is to be returned to the mortgagor. That such a contract might be usurious, and might be shown to be so, by proper allegations and proofs is unquestionable. But I think a sufficient case has not been stated here. But even if there were, there is another and conclusive answer to the objection. The seventh section of the act of April 10, 1851, " for the incorporation of building, mutual loan and accumulating fund associations," provides that neither the imposition of fines for the non-payment of dues or other fees, or other violation of the articles of association, nor the making of any monthly payments required by the articles of association, or of *any premiums for loans* made to members, shall be deemed a violation of the provisions of any statute against usury.

By the articles of association, each member was to be entitled to the sum of $800, out of the funds of the association, at its

termination, upon complying with the provisions of the articles, by paying the monthly dues, &c. But by article 13 it was provided that this sum of $800, instead of being paid at the dissolution of the association, might at the option of members be obtained by them, or some of them, at an earlier period. As often as the funds of the association should amount to $800, (one share,) that sum was to be put up to competition among the members, the member offering the highest premium for it was to be entitled to it, for the purpose of purchasing lands, building, &c. But as the party thus receiving in advance all the benefits of membership, would be relieved of all necessity and inducement to continue the payment of the monthly dues, during the residue of the existence of the association, he was required to give security for such payment. The process of obtaining in advance the amount of shares properly payable only at the winding up of the association, is called the purchase and redemption of shares. The defendant, being the owner of certain shares in the association, thus purchased or redeemed two of them : that is to say, he received in advance moneys not due till the close of the association. He then gave the bonds and mortgages in suit to secure the payment of the future dues, fees and fines, which had been theretofore secured by the liability of his shares to forfeiture in case of non-payment, which was provided for in the articles of association. So far the bonds and mortgages are not objected to ; nor do they seem objectionable in law ; whatever may be thought of the policy of thus putting one's funds out of his own control, and into the hands of agents and trustees for management and investment.

But it appears that when the sum received by the defendant was put up at auction among the members of the association, the competition for it was so great that he was required to pay, and did pay, a premium of $258, per share of $800. That is : he obtained and took $542, in hand, rather than to await the winding up of the association and get the $800. That such sacrifices should be made to obtain money, is well nigh incredible. But the motive for making them, whatever it was, seems to have been shared by other members of the association than the de-

fendant. For it must have been their bidding that induced him to give so enormous a sum for the present use of a little money. He would not voluntarily have given any such premium, or even any premium at all.

Upon purchasing the two shares in question the defendant gave the bonds and mortgages now in suit, receiving $542 in money, the association retaining the premium of $258 upon each share. The bond and mortgage are conditioned for the payment of $14 per month, until the termination of the association, being the monthly dues and redemption fees on the two shares. This sum of $14 is made up of the monthly dues of $3 per share, which every member of the association is, by article 10, bound to pay; and of $4 per share, being the interest on the nominal or par value of the share, $800, for one month, at six per cent. The precise ground of the defendant's objection is that this interest is charged on the $800, the par value of the share, instead of upon the sum of $542, which was actually advanced.

The answer to the objection is that the statutes of usury have been repealed as to this premium, by the provisions of § 7, above quoted. The taking of the premium is not to be deemed a violation of any statute against usury.

There may, perhaps, be some want of precision in the language of the enactment. The words used are, " nor shall the making of any monthly payment required by the articles of association, or *of any* premiums for loans made to members, be deemed a violation of the provisions of any statute against usury." To speak of the transaction in question as the "making of a premium," in obvious connection with "the making of the monthly payment," is clearly an incongruity. Some word has been omitted before the words "of any premium." And, to make sense of the expression, the missing term must be supplied. It may be either "payment," or "taking," or "receipt;" so that the clause would read that the payment, or the taking, or the receipt of the premium shall not be deemed a violation of any statute against usury. The meaning of the provision, however, is clear, without resort to any such process for the purpose of removing the incongruity. The obvious design is to remove these transactions

between the society and its members, beyond the pale of the statutes against usury. That purpose can only be effected by allowing the society to collect interest on the full amount of the share. To have provided merely that the association, instead of paying $800 at its close, to each member, might at an earlier period have advanced to each one that sum, or a less one, and on that advance might have collected legal interest, would require no interference with, or mention of, the law against usury. The transaction, if duly provided for, by express agreement, in the articles of association, would have formed no violation of any such law. Besides, the higher the rate of interest to be paid by each member to the association, the shorter would be the period required to complete the accumulation, on the completion of which the association was to terminate, and the payments to cease. The moneys collected by the association being the mutual property of all the members, and the greater the accumulation the shorter being the period during which they will have to bear the burden of paying the moneys for the purpose of accumulation, the ordinary objections to the collection of interest beyond the fixed rates are removed.

There is, therefore, in my judgment no foundation for the objection that the contract in suit is void for usury.

The considerations last adverted to, form the answer to the other objection urged by the defendant against the enforcement of his contract, viz : its oppressive and unconscientious character. That the defendant is required to pay considerable sums of money, every month, and that these payments may be increased by fines in case of default, and that such fines may be made heavier for a continued default, forms no sufficient reason for declaring the contract void, in the whole, or even *pro tanto.* It is not shown, or pretended, except in the arguments of counsel, that the defendant did not fully understand the nature of the bargain he made ; or that he could not have calculated the precise amount he would be bound to pay, or that he has been in any manner deceived, defrauded or misled, either in joining the association or bidding for the shares and paying his premium. His engagement may be an onerous one. But all his associates

entered into the same engagement and assumed the same burdens. For aught that appears, they have borne those burdens, and made all their payments regularly, in the expectation that the defendant and every other member would do the same, and thus the winding up of the association, and the termination of the tax upon them, would be speeded. To release the defendant now from his contract, or any part of it, is only imposing on each of them so much greater burden, and requiring a proportionate extension of payments, to an early relief from which they are justly entitled. The defendant must continue to pay into the common fund the sums he agreed to pay; and if the other members of the association equally comply with their agreement, all of them will be, at no very distant day, relieved from the necessity of making further contributions. They may not then have realized the benefits they looked for. They will, perhaps, have learned that the proprietor is the best guardian of property; that the making of extravagant gains involves great risks or great burdens; and that the steady accumulations of honest industry are the surest way to wealth. But they will have met with no losses which a reasonable prudence would not have enabled them to foresee and to measure.

The case of the *2d N. Y. Building Association* v. *Gallier*, which has been cited upon this point, does not warrant the defendant in claiming to be relieved from his contract or any part of it. There the fine for the non-payment of monthly dues was, on each share, 12 cents for the first month, 37 cents for the second, 75 cents for the third, $1.25 for the fourth, and each succeeding month 50 cents more than the preceding month. And the case was compared, not unreasonably, to the purchase of the horse, to be paid for, one farthing for the first nail in his shoes, two for the second, and so in geometrical progression. By the plaintiff's articles, however, the fines, though not light, are very different from those imposed on Gallier. They are for the first month, 12 cents; second month, 25 cents; third month, 37; fourth month, 50 cents; and every succeeding month $1. These fines are sufficiently definite in amount. Nor can I say that they are so clearly unreasonable as to war-

Citizens' Mutual Loan Association *v.* Webster.

rant me in declaring the article on the subject of fines void, and relieving the defendant from any penalty, except interest.

The objection which was taken in *The Franklin Building Association* v. *Mather*, (4 *Abbott*, 274,) to the provision for the investment of the surplus proceeds for the purpose of meeting future dues, is not raised in this case.

I must, therefore, hold that the plaintiffs are entitled to judgment.

The cause must be referred to a referee, to take and state the account between the parties, and to report the amount due to the plaintiffs from the defendant. If the latter desires, the referee will report what sums are due for monthly dues, redemption fees, interest and fines, with the particulars as to each. The defendant must be credited for all payments made. On the coming in of the report, unless the balance reported due is paid within thirty days, judgment of foreclosure and sale must be entered, providing for the payment of the plaintiffs from the proceeds of sale, of the amount reported to be due to them, with costs. The surplus to be brought into court, by paying it to the treasurer of Queens county, who must invest the same on bond and mortgage, to be held subject to the claims of the plaintiffs for subsequently accruing dues from Webster. Out of the moneys, before investment, the amount of the dues for six months may be paid to the plaintiffs in advance, on their allowing a rebate of interest; and on the collection of interest on the bond and mortgage, from time to time, a similar payment in advance may be made; but the plaintiffs must give security for refunding any part of such advance which would be due to the mortgagor, in case the association should terminate before the end of the period for which the advance may be made. Either party to be at liberty to apply to the court for necessary directions, as to such payments, in case the interest be not sufficient to pay the dues to the plaintiffs, or otherwise.

[KINGS SPECIAL TERM, July 6, 1557. *Birdseye*, Justice.]

## Hall *vs.* Barton.

Where the plaintiff, in a suit before a justice of the peace, gave notice of an application for a commission to take the testimony of a witness, to be directed to C., but on settling the interrogatories, the parties agreed to substitute K. as commissioner, in the place of C.; and the justice inserted the name of K. in the commission, and the commission was in fact executed and returned by K., but the justice inadvertently omitted to strike out the name of C. from the caption to the interrogatories, where it had been inserted, pursuant to the notice; *Held* that this was an error which did not vitiate the commission, or the return thereof.

*It seems* that the provisions of the revised statutes, requiring a copy of sec. 16 of 2 *R. S.* 394, to be annexed to every commission, is not applicable to commissions issued by justices of the peace.

The provision is merely directory, and not absolutely essential. The main question is, has the commission been properly executed ?

If the body of the commission contains an explicit direction in respect to the return of such commission, this is sufficient, although there be no direction indorsed on the back of it.

Where an exhibit, proved before the commissioner, was a bill of sale executed by J. M. and his wife, and the commissioner certified that the same "was produced and shown to the said J. M., a witness sworn and examined, and by him deposed unto at the time of his examination as a witness under such commission;" *Held* that the certificate was sufficient.

Where the return of the commissioner was written on the deposition, and the deposition and the commission, &c., were all annexed together, in such a manner that the return could not be separated from the commission and evidence; *Held* that this was a substantial compliance with the statute ; although there was no return indorsed on the commission.

Although there be nothing on the envelop, or elsewhere, showing that the commission was deposited as required by the statute, or that it was returned by mail, it will be presumed that the commission was so deposited and returned.

So, if it does not appear how the papers came to the justice's office, the presumption is that they came to him by due course of mail, and were opened by him; it being his duty to open them.

When interrogatories are objected to, on the trial, as leading, it is in the discretion of the justice to admit or reject the answers.

THIS action was commenced, and tried, before a justice of the peace of Essex county. The complaint was for the taking and converting of a cow, by the defendant. The answer was a denial, and property in the defendant. On the trial, the plaintiff offered in evidence a commission issued to James

Hall v. Barton.

Keese, to take the testimony of one James Meighan, residing in the city of New York. Annexed to the commission were the interrogatories and cross-interrogatories as settled by the justice. The caption of the interrogatories stated that the witness was to be examined before Charles Cheny, Esq. commissioner, &c. The justice, in his return, stated that the notice of application for a commission contained the name of Cheny as commissioner, but that the parties, on settling the interrogatories, agreed upon Keese, whose name was inserted in the commission, and that he (the justice) had accidentally omitted to erase the name of Cheny from the caption, in the interrogatories, and to substitute the name of Keese. The testimony was in fact taken before Keese, who returned the same, with the commission, interrogatories, exhibits and cross-interrogatories, all attached and annexed together, to the justice, by mail, as he was directed in the body of the commission to do. The interrogatories and cross-interrogatories were settled by the justice; both parties appearing before him, by their counsel, at the time of settlement, and no objections having been made by either party, to the form of the interrogatories. No copy of the 16th section of 2 *R. S.* 394, 395, was annexed to the commission. There was no direction on the commission, as to its return, but in the body of it the commissioner was directed to return the same by mail, to the justice, at Port Henry. There were other alleged defects, and several objections were taken to the form and return of the commission, and as to the manner of its return, which are noticed in the opinion of the court. The defendant's objections to the reading of the depositions in evidence were severally overruled; and on that and other evidence the plaintiff had judgment. The county court of Essex county affirmed the judgment, and the defendant appealed to this court.

*A. B. Waldo,* for the plaintiff.

*P. Butler,* for the defendant.

*By the Court,* C. L. ALLEN, P. J. The first objection to the commission, and to the reading of the depositions in evidence, was, that the caption of the interrogatories states that they were to be administered to the witness by Charles Cheny. The justice, in his amended return, sets forth how this mistake occurred. The parties, by their attorneys, upon the settling of the interrogatories, agreed to substitute Mr. Keese as commissioner, in the place of Mr. Cheny, who had been proposed by the plaintiff, in his notice. The justice inserted the name of Keese in the commission, but inadvertently omitted to strike out the name of Cheny from the caption of the interrogatories, where it had been inserted pursuant to the notice. The commission, however, was actually sent to, and executed by, Mr. Keese, who administered the oath and interrogatories to the witness, and reduced his deposition to writing, as required by the statute. Here was no error, therefore, in fact. The mere mistake of the name of Cheny, in the caption, which might be stricken out as unnecessary, and as being no part of the interrogatories, did not vitiate the commission, or its return, and the justice properly overruled the objection.