## SHANNON *v.* DUNN.

The articles of a voluntary association declared it to be formed "for the purpose of accumulating a fund for the purchase of real estate, making improvements thereon, and removing incumbrances therefrom, and for the purpose of accumulating a fund to be returned to its members who do not obtain advances as above mentioned, when the funds of the association" should "amount to $500 per share"; and fixed the number of shares at 1200, of which 400 were reserved "for the accommodation of members" wishing "to obtain larger loans than" could "be obtained on the shares previously held by them." They provided for the payment by each member of "an entrance fee," and also the sum of $2 monthly for each share he might hold during the continuance of the association, and for specified fines for each month's neglect to pay the monthly dues upon any share. They also provided that whenever the funds of the association should amount to $500, that sum should be "put up to competition," and the member offering the highest premium should have it for the purpose of building, &c., upon giving his bond, secured by mortgage of the real estate, for the payment of his monthly dues and fines, and the interest which, under the name of "a redemption fee," was to be paid monthly at the rate of six per cent per annum. Each member could have but ten shares, and he must be or become a subscriber for one share for every sum of $500 thus bid off by him, and pay the dues thereon. The articles also contained provisions for the redemption of the mortgaged premises "by the payment of an amount to be determined by the directors"; for the investment of the funds "not required for advances to members"; and for the termination of the association whenever its funds should be sufficient to pay all liabilities and $500 on each "unpurchased share"; in which case the debts were to be settled, and such dividend made to the holders of such shares, and no further monthly dues were to be paid. Where, agreeably to these articles, a member of the association owning ten shares, upon bidding off ten such sums of $500, received therefor, after the deduction of the premiums, $2110, and gave his bond and mortgage to secure the payment by him to the association of the interest on the $2110 monthly, and the monthly dues upon his ten shares, and his fines according to the articles:—

*Held*, that the contract was not usurious, unless it was in fact a device to evade the statute as to usury ; that whether it was such a device was a question of fact; and that from the mere terms and provisions of this contract the court could not, as matter of law, hold it usurious:—

*Held*, also, that where the condition of such mortgage had been broken, the plaintiffs, to whom it had been executed as trustees for the association, in an action upon the mortgage, were entitled to a conditional judgment for the full amount due according to the terms of the condition, as the contract was not upon its face usurious, and had not been shown to be so in fact.

WRIT OF ENTRY, on mortgage, to recover possession of certain real estate in Hooksett, in this county, for condition broken, and the purpose of foreclosing the right in equity to redeem the same.    The writ is dated October 4, 1859.    The plaintiffs are Jonah S. Shannon, Moulton Knowles, and John T. Spofford, trustees of the Manchester Loan and Fund Association.

The action is founded upon a mortgage given by the defendant, Cyrus Dunn, to the plaintiffs, as trustees of said association, dated May 29, 1857.    The consideration stated in the mortgage is $2110, and the conditions, in part, are as follows : namely, " Provided, nevertheless, that if the said Cyrus Dunn, his executors, administrators, or assigns, shall pay unto the said association or its proper officers, or to said trustees, their successors or assigns, the sum of $30.55 per month, until the termination of said association, and also all fines which may be charged to him, pursuant to the articles of said association, and shall keep all other covenants, promises, and agreements made with said trustees or said association, according to the tenor of bond of even date herewith, signed by said Dunn to said trustees, and shall fulfill all the obligations of said bond, &c."

The bond is of the same date, and the condition as follows : namely, " That, if the above bounden obligor, his heirs, executors, or administrators, shall pay or cause to be paid unto the above named obligees, their successors, or assigns, the sums of $30.55 per month, on the last Friday of each and every month, until the termination of said association, whereof said obligor is a member, and also all fines which shall be charged to him, pursuant to the articles of said association, during said period, and also shall keep or cause to be kept all other covenants, promises, and agreements entered into by him, as member of said association, and subscriber for shares thereof, according to the true intent and meaning of said articles, then this obligation shall be void ; otherwise in full force and virtue."

The association was organized in January, 1855.    The articles of association, their rules and by-laws, and the bond and mortgage were a part of the case.

The defendant had been a member of the association from its organization up to May, 1857, and was at that time the owner of ten shares in the same, on which he had paid, May 30, 1857, and prior thereto, $586.47.    In May, 1857, in accordance with the rules of the association, he sold to the association, according to article 14, his ten shares, and received $2110 for the same, and at that time gave said bond and mortgage, conditioned, among other things, to pay

two dollars per month upon each of his ten shares, and the interest upon the $2110, every month, making the $30.55 each month, and in case of failure to pay said sums monthly, to pay certain fines, specified in the articles of association. There was paid monthly, June, $25.50 ; July, $30.55 ; and August, 1857, $30.55. In March, 1858, the defendant paid $106.25, being the interest for seven months, but no part of the dues on the shares, of which sum $32.40 was passed to credit of fines, and the balance to interest. Nothing has been paid since March, 1858.

By article 10, members are to pay fines for every non-payment on each share, as follows : namely, first month, twelve cents ; second month, twenty-five cents ; third month, thirty-seven cents ; fourth month, fifty cents ; fifth month, one dollar ; and every succeeding month, one dollar.

It is provided in the articles of association, that the said association shall not continue longer than eight years from its organization.

Of the sum of $2110, May 29, 1857, the defendant received $1100, and in July following, the balance.

The questions arising in the case were transferred, the court to decide upon the amount of damages due the plaintiffs, reserving the right of either party to go to the jury.

*Cross & Topliff*, for the plaintiffs, cited *Merrill* v. *McIntire*, 13 Gray 157 ; *Baxter* v. *McIntire*, 13 Gray 168 ; Chit. Cont. 701 ; 2 Pars. Cont. 420 ; 10 Bac. Abr. 284, 285 ; *Pomeroy* v. *Ainsworth*, 22 Barb. 118 ; *State* v. *Coquiland*, 6 Ind. 232 ; *Brewster* v. *Edgerly*, 13 N. H. 275 ; *Mead* v. *Wheeler*, 13 N. H. 353.

*Morrison & Stanley*, for the defendant.

BARTLETT, J. The plaintiffs are trustees of a voluntary association, which is said by its articles to be formed "for the purpose of accumulating a fund for the purchase of real estate, making improvements thereon, and removing incumbrances therefrom ; and for the purpose of accumulating a fund to be returned to its members who do not obtain advances as above mentioned, when the funds of the association shall amount to $500 per share." The number of shares is fixed at 1200, of which 400 are reserved "for the accommodation of members who wish to obtain larger loans than can be obtained on the shares previously held by them." From the somewhat obscure provisions of these articles, we understand that every member is to pay an "entrance fee," for each "share," as it is called, held by him, and is also to make a monthly payment of two dollars for the same, during the continuance of the association. For neglect to pay these monthly dues, the member is liable to a fine for each share of twelve cents for the first month, twenty-five cents for the second, thirty-seven cents for the third, fifty cents for the fourth, and one dollar for each succeeding month. All shares on which no payment is made for six months, are forfeited, though the directors may, in certain cases, remit the forfeiture. Members paying their dues three months or more in advance,

are entitled to interest at the rate of six per cent. Whenever the funds of the association amount to $500, that sum is to be "put up to competition," and the member offering the highest premium is to have it, "for the purpose of building, or purchasing freehold or leasehold premises, or removing incumbrances therefrom." This transaction is termed in the articles, "purchasing shares," but, if not colorable, is, in fact, nothing more than the member receiving $500, less the premium, at the time, in lieu of the $500 to which he would be entitled at the winding up of the association. It is the sale of his right to the $500, when it shall accrue, for a less sum in hand. No member can "purchase" more than ten shares, and he must be the owner of a number of shares equal to the number he shall thus "purchase," or become so by subscribing and paying the value of such as he has not already subscribed and paid for; or, in other words, he must pay or have paid the dues upon one share for every $500 that he thus obtains, and he can obtain but ten such sums in all. A member purchasing one such sum, could, at the time of the purchase, elect to receive nine more at the same rate of premium, and upon the same terms, in which case the nine amounts were to be paid him out of "the next moneys to be received." Among other things, "the purchaser" is required to give his bond, secured by mortgage of the real estate, for the payment of his monthly dues and fines, and the interest, which, under the name of "a redemption fee," is to be paid monthly, at the rate of six per cent per annum. Article 17 provides for a redemption of the mortgaged premises, by payment of an amount to be determined by the directors. Whenever there are funds enough to pay all liabilities, and $500 on each "unpurchased" share, the debts are to be paid, and such a dividend is to be made to the holders of such shares, and no further monthly dues are to be paid, but the association is to terminate. The agreed case states that the association was limited to eight years; but in the articles, which are made part of the case, we find no provision for a termination, other than that already stated. The funds, not required for advances to members, were to "be invested upon bond and mortgage, or such other security" as should be determined, agreeably to the articles.

We can see that, in such an association, the relative advantages of the accumulators and the borrowers, as they are sometimes termed, may be by no means equal, and that a member obtaining an advance may, in some cases, be subjected to an exorbitant rate of interest; but we can not, as matter of law, pronounce the contract, upon which such advance is made, usurious. The monthly payment is not, apparently, exacted for the advance, but for the privilege of membership, and of ultimately sharing the dividend. Although the member obtaining an advance upon all his shares is to receive no dividend, he still continues interested in the profits of the association, as the time at which his payment of monthly dues and interest will cease is dependent upon them. If the transaction here is to be regarded as an advance to Dunn, it was from funds in which he had a common interest with the other members, and in

which he continued interested, and "is to be regarded as a dealing with the partnership funds," rather than as a loan. *Silver* v. *Barnes*, 6 Bing. N. C. 180; *Gilpin* v. *Enderly*, 5 B. & Ald. 954; Chit. Cont. (10th Am. Ed.) 774; *Burbidge* v. *Cotton*, 8 E. L. & Eq. 57.

If the transaction is to be deemed a sale by Dunn for a present sum of his right to a future dividend of $500 upon each share, it seems no more open to objections than somewhat similar transactions in *post obit* bonds, annuities, stock contracts, and negotiable securities. 2 Saund. Pl. & Ev. 897; Chit. Cont. 774, 775; Story Cont., secs. 595, 600; *Beetee* v. *Bidgood*, 7 B. & C. 453; *White* v. *Wright*, 3 B. & C. 277, by *Bailey*, J. The contract does not provide for the return of the sum advanced at all events. The association has other means of accumulation beside the monthly payments and the interest on advances; and, whatever may be the probabilities in fact, we can not say, as matter of law, that, by the contract, Dunn will ever be obliged to refund the $2110; for, whether he will be called on at all, and if so, for how much, will depend on the gains of the association; for as soon as these are sufficient for a dividend of $500 on each "unpurchased share," his payments are to cease. 1 Saund. Pl. & Ev. 896–898; Chit. Cont. 774; Story Cont., sec. 600. As the provision for fines applies equally to all members, whether obtaining advances or not, and as it can be avoided by making the payments as they fall due, we can not hold it usurious, however harsh we may deem its terms. *Citizens' Association* v. *Webster*, 25 Barb. 263; *Pomeroy* v. *Ainsworth*, 22 Barb. 118; 2 Saund. Pl. & Ev. 898; Chit. Cont. 775. We can not, therefore, pronounce the contract upon its face usurious.

These views accord with the current of decisions elsewhere: *Silver* v. *Barnes*; *Burbidge* v. *Cotton*; *Citizens' Association* v. *Webster*; *Merrill* v. *McIntire*, 13 Gray 157; *Baxter* v. *McIntire*, 13 Gray 168; *Bibb Association* v. *Richards*, 21 Geo. 592; Chit. Cont. 773. In Pennsylvania, the court seem to have held a transaction, differing somewhat in form from the present one, usurious, upon the ground that it was a mere cover to effect loans at illegal rates of interest. *Kempfert* v. *Building Association*, 30 Penn. 465; *Hughes' Appeal*, 30 Penn. 471. But, under our practice in an action at law, we understand that to be a question of fact for the jury. In the *Building Association* v. *Meriden Co.*, 24 Conn. 160, there was a loan to a party who was not a member. *The Building Association* v. *Wilcox*, 24 Conn. 147, is not in conflict with the views we entertain. In that case, upon a somewhat different state of facts, the court, sitting in equity, found that a direct loan was made at fifteen per cent interest, and held that a statute allowing the association to take "a bonus," in addition to the legal rate of interest, did not authorize it to take an additional interest of nine per cent, under the name of "a bonus." Although we can not say, as matter of law, that the present transaction was usurious, it does not follow that it was not so in fact. However benevolent may have been the original purpose of such associations, we can not fail to see that they may easily be perverted to become instruments of extortion, and mere covers for usury. It is said that, "Where a contract is not on the face of it usurious, it

is always a question of fact for the jury to determine whether it is a mere device to evade the statute, or is a *bonâ fide* transaction, to which the statute does not apply, the intention of the parties being the test of the legality of the transaction. Story Cont., sec. 601; Chit. Cont. 779. Where the parties have made the contract which they intended, and, without any mistake of fact, have secured by it illegal interest upon a loan, perhaps the question of their intention to violate or evade the statute may not be material. 2 Saund. Pl. & Ev. 896; Story Cont., sec. 597. Where it is alleged that, under color of a transaction not unlawful upon its face, an attempt has been made to evade the statute, that question is for the jury. *Silver* v. *Barnes*; *Tate* v. *Wellington*, 3 T. R. 538; *Gilpin* v. *Enderly*, 2 Pars. Cont. 420; Story Cont., secs. 593, 595, 600; 2 Saund. Pl. & Ev. 896, 897; *Train* v. *Collins*, 2 Pick. 152; Chit. Cont. 780, and note.

Unless the defendant desires a discharge of the case, in order to try this or some other question, there must be a conditional judgment for the plaintiffs, for the full amount due according to the terms of the mortgage.