R. W. MASSEY AND SALLIE E. MASSEY v. THE CITIZENS' BUILDING AND SAVINGS ASSOC'N OF PAOLA, KAN.

1. BUILDING ASSOCIATION, *Valid Corporate Existence of; Powers.* Where under the "private corporations" laws of 1868, 1870 and 1871, (Gen. Stat. 190 *et seq.;* Laws of 1870, pages 125, 126; Laws of 1871, pages 169, 170,) the charter of an intended private corporation is duly drawn, subscribed, acknowledged, and filed in the office of the secretary of state, and a duly-certified copy thereof is issued to the company by the secretary of state, such company then has a valid corporate existence, and may legally organize as a corporation. It may then open books for subscriptions to its capital stock, and when the larger portion thereof is subscribed for and taken, and the amount taken is as much as the law requires the corporation to possess, such corporation then has the power to transact such business as its charter contemplates, although the entire amount of the capital stock as fixed by the charter has not yet been subscribed for or taken.

2. AUTHORITY OF SUCH CORPORATION *to Loan Money.* A building and savings association duly organized under the said laws of Kansas, whose object is "the accumulation of a fund by small monthly installments, to enable members of the association to purchase real estate, erect buildings, redeem mortgages, satisfy ground rent, loan money, pay taxes, and effect other similar purposes," has authority to loan money from such accumulated fund to its members.

3. POWER OF SUCH CORPORATION *as to Security for its Funds Loaned.* Where a corporation is authorized to loan money but its charter does not expressly authorize it to take a mortgage or any other security, the corporation will nevertheless have power by implication to take a mortgage to secure the repayment of its funds loaned, where the debt is *bona fide,* and created in the regular course of business.

4. ESTOPPEL; *Note and Mortgage to Corporation.* Where a note and mortgage are given to a *de facto* corporation in its corporate name for money loaned by the corporation to the maker of the note and mortgage, and such corporation apparently has the power to loan money and take notes and mortgages therefor, *held,* that the mere giving of said note and mortgage, and the receiving of the money therefor, will, in the absence of fraud and misrepresentation, be considered such an admission of the corporate existence and power of the corporation as will estop the maker of the note and mortgage from denying such corporate existence or power.

5. CORPORATE POWER; *Security for Money Loaned.* Where a corporation has power to loan money to its members and take security therefor, it

may loan money to one of its members and take the joint note and mortgage of such member and another person, although the property mortgaged belongs to the other person.

6. CONTRACT, *Not Usurious.* Under the laws of Kansas, where a building and savings association loans its funds to those of its members only who bid the highest premium for the priority of the loan, and notes are given by the borrower to the association for an amount equal to both the premium bid and money received by the borrower, *held,* that the contract between the borrower and lender in such a case is not usurious.

7. —— *Right of a Security.* Where a member of a building and savings association borrows money from the association, and gives a joint note of himself and another as security therefor—the mortgaged property belonging to the other person—and also at the same time assigns to the association a share of stock in the association as additional security for the debt, such other person has the right, when sued for the debt, to have such stock first sold to satisfy such debt.

*Error from Shawnee District Court.*

ACTION brought by the *Citizens' Building and Savings Association,* of Paola, Kansas, against *Massey* and another, upon a certain promissory note and mortgage by them executed to the said *Association.* The action was commenced in Miami county, but duly removed to Shawnee county, where it was tried February 10, 1876, and judgment rendered against the defendants, who bring the case here. The facts are sufficiently set forth in the opinion.

*B. F. Simpson,* for plaintiffs in error.

*W. T. Johnston,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by the Citizens' Building and Savings Association of Paola, Kansas, against R. W. Massey and Sallie E. Massey, on a certain promissory note and mortgage executed by them. The action was commenced in Miami county, but before trial it was removed on change of venue to Shawnee county, where it was tried, and judgment rendered in favor of the plaintiff below, and against the defendants below. The defendants then as

plaintiffs in errors brought the case to this court, and now **Statement of facts.** ask for a reversal of the judgment below, for various reasons which they have fully discussed in their briefs. The facts of the case are substantially as follows: On February 4, 1873, the defendants below, plaintiffs in error, executed the note now in suit, which note reads as follows:

"$500. PAOLA, KANSAS, February 4, 1873.

"Fifteen years after date, we promise to pay to the order of the Citizens' Building and Savings Association of Paola, Kansas, five hundred dollars, for value received, with interest thereon at the rate of one-half of one per cent. per month, payable monthly on the first Tuesday of each and every month, at the office of the corporation, in Paola, Kansas. Appraisement waived.        R. W. MASSEY.
                                SALLIE E. MASSEY."

To secure the payment of this note, the makers thereof, on February 6, 1873, executed to the payee thereof the mortgage now in suit, on certain land in Miami county, owned by said Sallie E. Massey. Whether this land was occupied as a homestead or not, is not shown. This mortgage, however, was not only a security for the payment of said promissory note, but it also contained stipulations making it a security for the payment of certain dues and fines, which R. W. Massey as a member of said Citizens' Building and Savings Association, agreed to pay. It also contained a stipulation, that if any default should be made in the payment of said note or interest, or in the payment of said dues or fines for three months, or in the payment of taxes accruing against the land, or in keeping the premises insured, "then, in either of these cases, the whole of said sum mentioned in said note, together with the interest thereon, and the dues and fines owing to said association, shall, and by this indenture does, immediately become due and payable." The mortgage also contained a stipulation giving to the plaintiff an attorney-fee of $25, in case the mortgage had to be foreclosed.

The Citizens' Building and Savings Association was a cor-

poration, organized September 2, 1871, under the laws of Kansas, (Gen. Stat. 190, *et seq.;* Laws of 1870, pp. 125, 126; Laws of 1871, pp. 169, 170,) and did business in the city of Paola, Miami county, Kansas. The object of the association was "the accumulation of a fund by small monthly installments, to enable the members to purchase real estate, erect buildings, redeem mortgages, satisfy ground rent, loan money, pay taxes, and effect other similar purposes, in such manner as the association should from time to time determine." The capital of the company was fixed at $100,000, divided into 200 shares of $500 each. Stockholders were required to pay on each share held, monthly dues of $2, and a fine of 25 cents was added thereto for each failure to pay the same when due; and should a member fail for three months to pay his dues, interest and fines, he should forfeit his shares of stock, and all his rights and privileges as a member. As soon as $500 was accumulated, it was to be loaned, and the preference or priority of such loan was sold to the stockholder offering to pay the highest premium therefor. A loan, or the privilege thereof, of not more than $500 could be sold at any one time, and the premium offered was deducted from the amount of the loan; each loan to bear interest from date at the rate of one-half of one per cent. per month, to be paid at the end of every month. Every member of the association not in arrears was entitled to a loan on good and sufficient security of any sum not exceeding the amount of stock held by such member, such loan to be made only upon real estate, buildings, or shares of stock of the association (and sometimes in addition personal security), and every member receiving a loan should mortgage to the association as many shares of stock as he received loans, regardless of any other security he had given. The member who successfully bid for a loan would receive in money the difference between the amount of the loan and the premium bid therefor; thus, if the premium bid was $200 for a loan of $500, he would receive in money $300; and he was required to give a note for a sum equal to the amount of both the premium and the

money actually received, such sum to bear interest at the rate of one-half of one per cent. per month, payable monthly, to be secured by mortgage on unincumbered real estate, or by shares of stock, and sometimes in addition to the other security by personal security. The member obtaining the loan was required to continue to pay his monthly dues as before, the same as other members, until by the accumulation of funds each share after paying the debts and expenses of the association would be worth par value, when the company would be ready to be dissolved by the cancellation of the debts of those members who had obtained loans, and the payment to the other members who had not obtained loans, the par value of their shares.

The above-mentioned note and mortgage were given to secure a loan of $500, made by the association to said R. W. Massey, who was at the time a member of the association, he having bid the highest premium offered therefor. Subsequently he failed to pay his monthly dues, fines and interest, and the note and mortgage becoming due in accordance with the stipulations of the mortgage, suit was commenced thereon on August 11, 1875, in the district court of Miami county, by the association, against the makers of the note and mortgage, for the sum of $500, with interest thereon at the rate of one-half of one per cent. per month from February 2, 1875, and $2 per month for monthly dues for each and every month commencing with and including March, 1875, and $25 attorney's fee for foreclosing said mortgage.

The defendants below filed separate answers to the plaintiff's petition. R. W. Massey for his defenses alleged: First, that at the time the plaintiff below made the loan to him and took from the defendants their note and mortgage to secure its payment, only 157 shares of the 200 shares of capital stock were subscribed, and all the capital stock not having been subscribed, the plaintiff had no legal power or authority to transact business with the defendant, to make him a loan or to take his note and mortgage; second, that the loan was made in pursuance of a mutual agreement between the

plaintiff and defendant that the plaintiff should lend the defendant money at the rate of sixty per cent. per annum, and that the defendant actually received only about $200 as the consideration for said note; and, third, that he had paid to the plaintiff on said note and mortgage the sum of $500, and was not indebted to the plaintiff in any amount.

The answer of Sallie E. Massey — First, denied that the plaintiff was duly and legally incorporated, denied that it ever had any legal or valid existence as a corporation; and, second, alleged that the capital stock of the plaintiff had not been fully subscribed; that it had no legal authority to transact business or to take a mortgage to secure a present loan of money; and, third, that the whole object and intent of the corporation was and is to evade the usury laws of the state; that R. W. Massey received only $240 on said note; that there was no valid consideration for the other $260 thereof, but that it was taken by the plaintiff in excess of the legal rate of interest; and that said R. W. Massey had paid on said note and mortgage the sum of $250 in full payment of the said $240, and that said defendants were not indebted to the plaintiff on said note and mortgage.

Neither of these answers was verified by affidavit, and therefore the allegations of the petition, setting forth the execution of said note and mortgage, and the existence of said association as a corporation, were not put in issue. (Civil Code, § 108; Comp. Laws of 1879, p. 616, and cases there cited.)

The replies of the plaintiff averred the organization of the corporation, and the opening of books for subscription to the capital stock; admitted that but 157 shares of said capital stock had been subscribed; averred its authority to transact business; that the note and mortgage were executed and delivered to plaintiff as a corporation; admitted that the defendant, R. W. Massey, received only $220 from the plaintiff, and that the difference between said sum and the $500 mentioned in said note and mortgage, was a premium bid by said R. W. Massey, as a member of said association, for a priority of a

loan, at a regular sale of plaintiff's funds, in accordance with the constitution and by-laws of plaintiff, with all of which defendants were well acquainted, etc.

The case was tried on change of venue by the district court of Shawnee county, without a jury, and judgment rendered in favor of the plaintiff for $550, for "principal, interest, dues and fines," and for $25 for plaintiff's attorney fee for foreclosing said mortgage, and for costs. The judgment is followed by the usual decree for foreclosure and sale of the mortgaged premises, without appraisement, as provided for in the note and mortgage.

There are four principal questions discussed by counsel, which we shall now proceed to consider, to wit:

1. Had the Citizens' Building and Savings Association legal power or authority to transact business before the full amount of its capital stock, as fixed by its charter, was subscribed?

2. Were the defendants, or either of them, estopped from denying the authority of the plaintiff to transact business as a corporation?

3. If it had such authority, did it exceed its powers in making a loan to Sallie E. Massey, who was not a member of the corporation?

4. Was the contract usurious?

The first of these questions must be answered in the affirmative. The charter of the association was duly drawn, subscribed, acknowledged, and filed in the office of the secretary of state, September 2, 1871, and a certified copy thereof was issued to the company by the secretary of state, September 4, 1871. Books were duly opened for subscriptions to the capital stock of the association, and one hundred and fifty-seven shares of this stock were duly subscribed for and taken; and the books have since been continually kept open to receive subscriptions to the capital stock of the company. In the absence of proof to the contrary, it is presumed that the board of directors named in the charter duly organized by the election of officers, etc., and the association

did do business in the same manner that it would have done business if it had been duly and legally organized. Section 6 of the corporation act provides for selecting the board of directors for the first year before the charter of the corporation is filed with the secretary of state, and § 10 provides that "the existence of the corporation shall date from the time of filing the charter, and the certificate of the secretary of state shall be evidence of the time of such filing." (Gen. Stat. 192, 193.) It would seem that a corporation that had a valid existence and a board of directors would have power to do business, although all the capital stock of the corporation as provided for by its charter had not yet been subscribed for and taken by individuals. In the present case, more than three-fourths of the capital stock had been taken; all the laws for the creation and organization of such corporations had been substantially complied with; and there was not then and has not been at any time since any law that requires a corporation like this to have more capital stock than the amount that was in this case actually subscribed for and taken. Therefore, we think the present corporation had the power to transact all the legitimate business for which it was created. (*Hunt v. Bridge Co.,* 11 Kas. 412, 436, *et seq.*)

*1. Building association, valid corporate existence of; powers.*

But it is claimed that the charter of the present corporation does not confer power upon the corporation to loan money; that it has authority only to accumulate funds by small monthly installments; that it is the members, not the corporation, that may build houses, loan money, etc. We do not think that this is a fair or reasonable construction of the language and spirit of the charter. The object of the association is therein stated to be, "the accumulation of a fund by small monthly installments, to enable the members of the association to purchase real estate, erect buildings, redeem mortgages, satisfy ground rent, loan money, pay taxes, and effect other similar purposes," etc. What was the "fund" accumulated for? To enable members to do certain things specified in the charter. How could it enable them to do

these things? By loaning them money from its accumulated fund. By fair implication, it was one of the purposes of the charter, and one of the powers intended to be conferred upon the company by it, to *loan* its accumulated funds to its members. But the word "loan" is sometimes, though improperly, used in the sense of "borrow." Thus in the case of the *Cincinnati German Building Association No. 3 v. Flach*, 1 Cin. Sup. Court Rep. (Ohio) 469, Judge Hagans in delivering the opinion of the court, and in speaking of a member borrowing money from the association, says: "He chose, by drawing according to the constitution and by-laws of the corporation, *to loan from it*," etc. The word "loan" was probably used in the present case in the sense of borrow. It was probably not the intention of the company to enable its individual members to loan money to other persons, but rather, to enable its members to borrow money from its own funds; and this was the universal practice of the company and its members, so far as is shown. We think that it was intended

2. Authority of such association to loan money.

by the charter to confer upon the corporation the power to loan its funds (accumulated as aforesaid) to its members, in such manner and under such rules and regulations as the association might from time to time determine and adopt, within the provisions of its charter. And if it had the right to loan its funds, then it necessarily, and by unavoidable implication, had the right to take security for the repayment of the money thus loaned, and interest. ( 2 Kent Com. 283; *Silver Lake Bank v. North*, 4 Johns. Ch. 370, 373.) Thus, although the charter contains no express provisions authorizing the taking of notes, mortgages or other securities, yet, by authorizing loans to be

3. Power of corporation as to security for its funds loaned.

made, it does by the clearest implication authorize all securities to be taken which are usually taken to secure loans. We are of course supposing the whole transaction to be *bona fide* on the part of the corporation, and the debt to be created in its regular course of business. Corporations possess all those powers which are expressly conferred upon them by the acts of incorporation,

and all those additional and incidental powers which are reasonably necessary for the purpose of carrying into effect the powers expressly granted, and reasonably necessary for the purpose of attaining the objects of their creation.

But suppose the company was not duly organized, and that it exceeded its authority in making the loan, and taking the note and mortgage involved in this action to secure such loan, then were the defendants (plaintiffs in error), or either of them, estopped from denying the corporate existence of the plaintiff (defendant in error), or its authority to transact business as a corporation? It is admitted, that on October 25, 1872, R. W. Massey became, and at the time the loan was made to him was, and for a long time thereafter continued to be, a member and stockholder of said corporation; that when he became a member thereof he subscribed to the constitution and by-laws thereof, a printed copy of which he has had in his possession ever since; that in an open meeting of the association he, in accordance with the rules and regulations of the association, successfully competed with other members of the association for the priority of the loan to secure which said note and mortgage were afterward given, by offering to pay the highest premium bid therefor. Having thus recognized and dealt with the plaintiff below as a corporation, participating in its business, and receiving the benefits to which his membership therein entitled him, we think he is estopped from denying the corporate existence of the company, and is liable on his contract with it. The company was at least a *de facto* corporation, (existing *de facto* as a corporation under an existing law,) with apparent power to loan money to its members, and take notes and

4. Estoppel; note and mortgage to corporation.

mortgages, and therefore the giving of the note and mortgage to it *under the circumstances of this case* is, in the absence of fraud and misrepresentation, such an admission of the corporate existence and power of the company as to estop the maker thereof from denying that there was or is such a corporation or power. "One cannot, in the same transaction, both affirm and deny the existence

of a corporation; as, if he gives a note running to a corporation, he is estopped, when called on for payment, to deny the existence of the corporate body." (Bishop on Contracts, § 132.) We would also refer to the following authorities, to wit: Angell & Ames on Corporations (10th ed.), 648, 649, and cases there cited; *John v. Farmers', &c., Bank,* 2 Blackf. (Ind.) 367; *Ryan v. Vanlandingham,* 7 Ind. 416; *Congregational Society v. Perry,* 6 N. H. 164; *Jones v. Bank of Tennessee,* 8 B. Mon. (Ky.) 122; *Franklin v. Twogood,* 18 Iowa, 516, 525; *Railroad Co. v. Hurst,* 9 Ala. (N. S.) 513; *Den v. Van Houten,* 5 Halst. (N. J.) 270; *Depew v. Bank of Limestone,* 1 J. J. Marsh. (Ky.), 380; *Hutchins v. Smith,* 46 Barb. (N. Y.) 235, 240; *Hagerman v. Ohio Building and Savings Association,* 25 Ohio St. 186; *Newbury Petroleum Co. v. Weare,* 27 Ohio St. 343. Many authorities might be cited in support of the foregoing doctrine, but we think these are sufficient.

But it is insisted that Sallie E. Massey, who was not a member of the association, is not estopped from denying the corporate existence of the company, or from asserting that the loan was in violation of the authority conferred by its charter, or by the laws of Kansas; and hence that the collection of the debt cannot be enforced as against her. It is true that she was never a member of the association, and that the mortgaged premises belonged to her. It is also true that R. W. Massey alone effected the loan. But still the note and mortgage were executed by Sallie E. Massey as well as by R. W. Massey; that is, the note and mortgage were executed jointly by R. W. Massey and Sallie E. Massey, to secure a loan effected by R. W. Massey; and therefore Sallie E. Massey as well as R. W. Massey dealt with the plaintiff below as a corporation, giving a note and mortgage to it in its corporate name, and enabling R. W. Massey to get money from the company then admitted to be a corporation, which he could not have otherwise obtained. Therefore, under the authorities already cited, we think that Sallie E. Massey is estopped from denying the corporate existence of the plaintiff below. Whether a cor-

5. Corporate power; security for money loaned.

poration of this kind has the legal right to loan its funds to others than its members, it is not necessary for us now to decide, for the question is not fairly in the case. The record fairly shows that the loan was made to R. W. Massey alone, to whom the corporation had an undoubted right to loan its funds; and Sallie E. Massey was only a surety. The loan was contracted for by R. W. Massey at a regular sale for the priority of such loan, by Massey bidding the highest premium offered for such priority, and the company accepting the bid. Nothing further was necessary to be done after the sale to complete the loan, except for Massey to furnish to the company the required security for the loan. This he afterward did, by furnishing to the company the joint note and mortgage of himself and wife, said Sallie E. Massey. Both knew the custom of the company to take notes, mortgages, etc.; both knew that Massey could not obtain the money without this security, or other security equally good; and then, with all this knowledge, both united in giving this security, and we think the company had the legal right to take it; and Mrs. Massey as well as her husband is estopped from denying its validity. All was *bona fide;* at least, no claim of bad faith can be urged against the company.

But it is claimed that if Mrs. Massey signed the note as surety, the judgment should have been rendered against her, under § 470 of the civil code. (Gen. Stat. 720.) This question, however, was not raised in the court below, so far as appears from the record, and therefore it is not properly before this court for consideration. (*Kelly v. Collins,* 11 Ohio, 310.) Besides, a judgment rendered in a case like the present, under § 470 of the code, could apply only to the collection on execution of any remainder still due, after all the property specifically pledged for the payment of the debt had been exhausted. No execution to collect such remainder was ordered in this case, and it may be that such a thing is unnecessary.

Was the contract usurious, and the judgment of the district court consequently excessive? The act of March 2, 1869, (Laws of 1869, p. 37,) provides, "that premiums bid for pri-

ority of loan in building and saving or trust associations organized under the corporation laws of this state, by the members of such associations, shall not be deemed as usury, or subject to the provisions of sections three and four of an act regulating the interest of money (Gen. Stat. of 1868, ch. 51, pp. 525, 526;) and all such premiums incorporated in the notes given by the members of the associations, and all the fines assessed against its members in accordance with the by-laws of such associations, may be collected by civil action before any court having jurisdiction." This law was in force when the contract between these parties was made. R. W. Massey was a member of the association, which was organized under the corporation laws of this state. He became a member on equal terms with all the other members, was subject to the same rules and regulations, and was entitled to the same benefits arising from it. It was evidently expected that in time — probably in eight or nine years — the accumulations of the company would bring each share up to par value, after paying expenses and debts of the corporation; in which event the debts due the association for advances to members who had kept their dues and interest paid would be canceled, and those members who had not obtained any loan would be paid the value of their shares. It was a voluntary association of persons governed by certain regulations adopted by themselves, and intended for their mutual benefit, and anything that benefited the association benefited each individual. The monthly payment of dues was exacted for the privilege of membership, and of ultimately sharing in the dividends of the funds of the corporation; and these dues were paid by all members alike, whether they were borrowers or not. The payment of interest was only at the rate of one-half of one per cent. per month. It was not necessary for any member to pay a fine unless he chose to be delinquent in the payment of his dues or interest. *The premiums bid were never in fact paid,* but merely deducted out of the amount advanced by the company, *and it was never intended that the note or mortgage or the debt which they evidenced should be paid; but that, at*

*the closing up of the affairs of the association*, (which would probably be within eight or nine years from its organization,) *the debt and note and mortgage should be canceled.* Then how, in face of these facts, and of the said act of March 2, 1869, (against which there is no constitutional inhibition,) can it be said that the present contract is usurious? Massey paid nothing, nor was he to pay anything, except his monthly dues and interest; and he received from the corporation $220. This was more in the nature of a payment by the association, in advance of the dividend which would finally be due to Massey, than of a loan. Or rather it would be more in the nature of a sale by Massey to the company of his contemplated dividend, than of anything else. Massey continued to have an interest in the company after receiving said money and giving said note and mortgage. He was still a member; and was still required to pay his monthly dues, and also interest. It is true that he could not receive any dividend except by the final cancellation of his debt; but he was interested in having his debt canceled at as early a day as possible. For as soon as that was done, he would cease to pay monthly dues or interest. And the more that Massey should do in any manner to increase the funds of the company, the sooner the company itself would close up its business and terminate its existence, and the sooner his debt would be canceled, and the sooner he would cease to pay dues and interest. It would be possible for the company to be so prosperous by the collection of dues, interest and fines from other members of the association, that Massey would not pay to the company, in the aggregate by way of dues, interest and fines, as much as he actually received from the company. And if so, then there would be no room for charging usury against the company. How prosperous the company has been we cannot tell from the record, but probably not very prosperous. This sort of corporations has generally not met the expectations of any class of its members. They have generally proved to be snares and delusions to all their members, whether investors or borrowers. Gen-

<div style="margin-left:2em; font-size:small">6. Contract, not usurious.</div>

erally (to use a common phrase), "They don't pay." And it is seldom that either borrowers or investors can make any profit out of them, considering the time, trouble and expense necessary in organizing them and keeping them in operation. Upon this question of usury we would refer to the following cases: *Citizens' Mutual Loan Association v. Webster*, 25 Barb. 263; *Shannon v. Dunn*, 43 N. H. 194; *Burbridge v. Cotton*, 8 Eng. Law & Eq. 57; *Silver v. Barnes*, 6 Bing. (New Cases), 180.

The judgment of the court below, so far as the amount of recovery is concerned, will not be disturbed; but we are of opinion that the decree should be so modified as to direct first the sale of the share of stock assigned or transferred, or, in the language of article 5 of the by-laws, "mortgages" to the association by R. W. Massey, and that the proceeds of such sale be credited on the judgment, before proceeding to sell the mortgaged real estate. Said share must have some value, and probably there is no better way to ascertain its value than by offering it for sale. Said share may be sold subject to all dues which have accrued against it since the trial of this case in the court below, or it may be sold freed from all dues which have accrued prior to the sale; and in that case the dues which have accrued since said trial, and before the sale, will be first paid out of the proceeds of the sale.

7. Right of a security.

It is claimed, however, that said share has not only been assigned, but has been forfeited, to the company, and therefore that no credit should be allowed for it. This, however, is not in accordance with the rules of equity that apply in such cases, where personal property has been pledged as a security for a debt. And this stock was pledged merely as a security for a debt. If A. borrow money from B., and give his note therefor, with C. as his surety, who mortgages his property to secure A.'s debt, and at the same time A. delivers to B. his watch, as additional security, to be forfeited if default be made in the payment, can B. keep the watch, and recover from the makers of the note the full amount of the

debt and interest—having C.'s mortgaged property sold to satisfy the same? Or would not C. be entitled to have the watch sold first, and the proceeds of such sale credited on the judgment, before his property can be appropriated to the payment thereof? If the share has any value, Mrs. Massey has the right to have that value credited on the judgment, before any of the proceeds of the sale of her property shall be applied to its payment. With this modification, the judgment of the court below will be affirmed. The costs of this court will be equally divided.

The same questions being involved in the other two cases of this same title now pending in this court, and numbered respectively 1411 and 1412, the same judgment will be rendered.

All the Justices concurring.