1820.

SILVER LAKE
BANK
v.
NORTH.

---

THE SILVER LAKE BANK, (in *Pennsylvania,*) *against* G. NORTH.

A foreign corporation, or incorporated bank of another state, may sue in their corporate name, and may file a bill for the sale of land in this state, under a mortgage taken to secure money lent.

If the loan and the mortgage were concurrent acts, it is within the reason and spirit of the act of incorporation, by which the plaintiffs are authorized to take mortgages, &c., for the security of debts previously contracted.

But it seems, that this Court would not, in this collateral way, decide a question of *misuser*, by setting aside a *bona fide* contract.

If an incorporated bank of another state lends money, and takes a mortgage in this state, it is not a violation of the act of the Legislature of this state, passed *April* 21, 1818, relative to banks, &c., for restraining unincorporated associations from carrying on *banking* business.

Where a mortgagee was compelled, for his own security, to satisfy an execution on a prior judgment, in favour of another, he was held, by right of substitution, to stand in the place of the judgment creditor, and entitled, on a sale of the mortgaged premises, to receive out of the fund the amount of the judgment, as well as the mortgage debt.

*March 16th.*    THE bill stated, that on the 10th of *November*, 1817, the defendant mortgaged to the plaintiffs lands in the county of *Delaware*, in this state, to secure the payment of a bond of the defendant and *B. North*, to them, for 3,000 dollars, which was given to secure such sums of money as should be thereafter lent by the plaintiffs to the obli-

gors, or either of them. That on the 13th of *November*, 1817, the plaintiffs lent to *B. N.* 2,000 dollars, on this security, and on the 19th of *March*, 1818, the further sum of 525 dollars. That a judgment had been obtained by the *Catskill* bank, in this state, against the defendant, in *October*, 1817, for 1,083 dollars and 3 cents, on which the defendant and *B. N.* had assured the plaintiffs there was only the sum of 400 dollars due. That this judgment had been assigned to *M.* and *P.* with whom the defendant and *B N.* had combined to procure a sale, on execution, under the judgment, so as to defeat the plaintiff's security; and the plaintiffs were, therefore, compelled to pay to the sheriff, the amount of the debt and costs on the execution, being 1,129 dollars and 92 cents. *Prayer*, that this sum, with the interest thereon, might be added to the sum due on the bond and mortgage, and that the plaintiffs might retain, on the sale of the mortgaged premises, the amount so paid on the judgment, together with the mortgage debt, and costs; and that the mortgaged premises might be sold, and the equity of redemption foreclosed, &c.

The *answer* of the defendant admitted the material facts charged, and set up several grounds of defence: **1.** That the plaintiffs, being a corporation, created in the state of *Pennsylvania*, by virtue of an act of the Legislature of that state, passed *March* 21, 1804, which was set forth, this Court will not recognise their capacity to sue here as a banking corporation. **2.** That by the act of their incorporation, the plaintiffs were not authorized to take a mortgage, except to secure a debt previously contracted, in the course of its dealings; and here the money was lent after the bond and mortgage were executed. **3.** That the mortgage was a fraud upon the act of this state to *restrain* unincorporated banking associations.

The cause came on to be heard on the pleadings and proofs.

*margin:*
1820.

Silver Lake Bank v. North.

1820.        *Sudam,* for the plaintiffs.   He cited 1 *Johns. Cas.* 132.

SILVER LAKE
BANK
v.
NORTH.

8 *Johns. Rep,* 378.   16 *Johns. Rep.* 43.

*Van Vechten* and *Sherwood,* for the defendant.   They cited 1 *Johns. Rep.* 432.   3 *Term Rep.* 454.   4 *Term Rep.* 466.   1 *Bac. Abr.* 559. tit. *Corporation.*   4 *Inst.* 20.   1 *Black. Com.* 43.   2 *H. Bl.* 410.   1 *Bay's South Carolina Rep.* 46.   *Kaims' Law Tracts,* 312. 354.   2 *Cranch,* 168.   2 *Johns. Rep.* 114.   1 *Cranch,* 259.   3 *Cranch,* 323.   1 *Ld. Raym.* 562.   2 *Johns. Cas.* 324.   16 *Johns. Rep.* 7.   *Sanders on Uses,* 63.

THE CHANCELLOR.   There are several objections raised by the answer, and by the counsel, at the hearing, to the right of the plaintiffs to a foreclosure or sale of the mortgaged premises.

1. It is objected, that a foreign corporation cannot be recognised as such, and entitled to sue in our Courts.

*A foreign corporation may sue in its corporate name, in this Court, as well as in a Court of law.*

It appears, by the pleadings and proofs, that the plaintiffs are a banking corporation, created by an act of the Legislature of *Pennsylvania,* and that they took the mortgage in question to secure a loan of money made at their banking house in that state.   There is perfect justice and equity in their demand, and I cannot see, that the objection is even plausible.   It is well settled, that foreign corporations may sue here in their corporate name, and may prove, as a matter of fact, if the same were denied, that they were lawfully incorporated.   The *Bank of the United States* have sued in our Courts.   (1 *Johns. Cas.* 132.)   In *Henriques* v. *Dutch West-India Company,* (2 *Ld. Raym.* 1532.   1 *Str.* 612.) a suit was brought by a *Dutch* corporation, and sustained, both in the K. B. and in the House of Lords, though it was objected in that case, that a foreign corporation could not maintain a suit.   This Court ought to be as freely open to such suitors as a Court of law, and it would be most unrea-

sonable and unjust, to deny them that privilege.  They
might well exclaim,

> *Quod genus hoc hominum ?*————
> ————*hospitio prohibemur arenæ.*

2. Another objection is, that the plaintiffs had no right
to take a mortgage concurrently with the loan, in order to
secure it, and that their charter only authorized them to
take mortgages for " debts previously contracted.". If this
objection was strictly true, in point of fact, I should not
readily be disposed to listen to it.  Perhaps, it would be
sufficient for this case, that the plaintiffs are a duly incor-
porated body, with authority to contract and take mort-
gages and judgments; and if they should pass the exact line
of their power, it would rather belong to the government
of *Pennsylvania* to exact a forfeiture of their charter, than
for this Court, in this collateral way, to decide a question
of misuser, by setting aside a just and *bona fide* contract.
But if we were driven to that necessity, we might, on co-
lourable grounds, consider this to be a mortgage to secure
a debt previously contracted, for it is in proof, that " pre-
vious to the date and execution of the mortgage, the plain-
tiffs had agreed to loan the money," and it was loaned and
paid when the mortgage was delivered.  The debt may be
said to have been contracted for at the time of the agree-
ment, and the mortgage taken for its security.  But I do
not rest on any verbal criticism of the kind.  If the loan
and the mortgage were concurrent acts, and intended so to
be, it was not a case within the reason and spirit of the re-
straining clause of the statute, which only meant to prohi-
bit the banking company from vesting their capital in real
property, and engaging in land speculations.  A mortgage
taken to secure a loan, advanced *bona fide* as a loan, in the
course, and according to the usage of banking operations,
was not, surely, within the prohibition.

3. It is further said, that to support and enforce this
mortgage, would be repugnant to the act restraining unin-

*This Court
will not, in a
collateral way,
decide a ques-
tion of misuser
of a foreign
corporation.*

corporated banking associations. There is no allegation or proof of any fraudulent intent against the statute, and, certainly, none is to be intended or presumed. The act was made to prevent banking operations here, *within this state;* whereas, in the present case, the loans were made, delivered, and received, and the securities delivered at the banking house of the plaintiffs, at *Montrose,* within the commonwealth of *Pennsylvania.*

There is no solidity, nor justice, in either of the objections.

I shall, accordingly, decree a sale of the mortgaged premises, and the plaintiffs will be entitled, according to the prayer of their bill, to retain out of the surplus moneys, if any arising on the sale, the amount, with interest, of the moneys advanced by them to discharge the prior judgment on the land. The payment of the money was an act which they were compelled to do for their own safety, and the coercion was increased by the act of the defendant and the other parties to that judgment. The claim to indemnity out of the surplus funds is most manifestly just. The equitable doctrine of substitution applies to this case; and the plaintiffs must, for the sake of justice, be deemed to stand in the place, and to partake of the rights, of the judgment creditor. They have, under the circumstances of the case, and in the view of equity, his lien upon the fund.

Decree accordingly.