## Case No. 12,163.

### RUSSELL v. TOPPING et al.

#### [5 McLean, 194.] [1]

Circuit Court, D. Illinois. Dec. Term, 1850.

CORPORATIONS — RIGHT TO HOLD REAL ESTATE — ESTOPPEL—MORTGAGES—FORECLOSURE.

1. A person mortgaged certain tracts of land to the plaintiff. and afterwards mortgaged some of the tracts to the State Bank of Illinois. The plaintiff having foreclosed his mortgage, the court decreed a sale of the mortgaged premises. At the sale the plaintiff and the bank were competitors in bidding, but the bank became the purchaser of a lot not included in its own mortgage, in order to protect itself and prevent the property from being sacrificed. By its charter the bank was prohibited from purchasing real estate, except what was required for its business, or such as was mortgaged or conveyed for debts, or such as had been purchased by it on judgments, or obtained on debts; *Held*, that the bank had not the legal capacity to acquire the title to the lot at the sale.

[Distinguished in Blunt v. Walker, 11 Wis. 351. Cited in brief in Ray Co. v. Bentley, 49 Mo. 238.]

2. The plaintiff received the purchase money, and the mortgagor being otherwise indebted to him, he brought suit against him, recovered judgment, issued execution. levied on and sold the same lot. The plaintiff purchased the lot at this sale, and received a deed from the prop-

1 [Reported by Hon. John McLean, Circuit Justice.]

er officer. The plaintiff, notwithstanding his receipt of the purchase money, has the right to contest the validity of the sale to the bank.

3. The plaintiff and the bank being competitors at the sale, and the plaintiff having in no way induced the bank to bid in the property, the law of estoppel in pais does not apply to the case.

4. By the common law every corporation had the right to purchase, hold, and convey real estate. This right has been restricted in England by the statutes of mortmain. In modern times, however, the legislature generally prescribes in the charter some limits to the power of a corporation to purchase and transfer real property.

5. It is a principle universally acknowledged, that a corporation can only act in the manner indicated in its charter. Any thing absolutely prohibited by its charter, if attempted to be done, is a nullity.

[Cited in Alabama & C. R. Co. v. Jones, Case No. 126.]

6. A title by deed implies a contract, or at least, competent parties. A deed to a person having no existence, is generally inoperative, and passes no title from the grantor. If a man grant his estate to an imaginary corporation, no title passes, and it is precisely the same if it is granted to a real corporation, rendered incapable by its charter, of taking the grant. As to that particular faculty, it is not a corporation.

[Cited in Harriman v. Southam, 16 Ind. 190.]

7. Whatever may be the rule in some of the states, where the doctrine of strict foreclosure prevails, in Illinois, the uniform practice both at law and in equity is, to order a sale of the mortgaged premises.

8. The modern authorities regard a mortgage merely as a security for the debt, and until a sale takes place under an order of the court, the title to the mortgaged property is in the mortgagor, subject to the incumbrance.

At law.

Billings & Parson, for plaintiff.
Davis & Edwards, for defendants.

DRUMMOND, District Judge. This is an action of ejectment brought for a tract of land in Madison county. A question as to the admissibility of certain depositions taken on the part of the defendants, which the plaintiff seeks to exclude, has been argued before me, and this, by an understanding between the parties, has brought up directly for consideration all the merits of the cause, most of the facts upon which the controversy is to turn, being matters of agreement. The opinion of the court is desired upon the law of the case.

It appears that a man by the name of Howard, being indebted to the plaintiff, in 1835 gave him a mortgage on some real property to secure the debt, which included the tract in question. The plaintiff in 1841, foreclosed his mortgage by a proceeding on the equity side of this court. [Case No. 12,156.] The State Bank of Illinois was made a party defendant, and filed an answer to the bill, alleging that Howard was largely indebted to the bank, for which indebtedness a mortgage had been given by Howard, but subsequent to that of the plaintiff, and which included several parcels of land covered by the plaintiff's prior mortgage, but not the lot in controversy. At this time Howard was insolvent, and the bank asked that the lands not included in their mortgage should first be sold to pay the plaintiff's debt, and that the lands included in the mortgage of the bank (and which were also in the plaintiff's mortgage) should be sold only in the event of the other lands not being sufficient to pay the plaintiff's debt. The court decreed accordingly, and ordered, that unless the plaintiff's debt were paid within twenty days, the land should be sold by a commissioner. It was sold in pursuance of the decree. At the sale the bank purchased the tract in controversy, and a deed was made to the bank by the commissioners. The defendants claim through the bank. The plaintiff received the purchase money paid by the bank. Howard being liable to the plaintiff, for other indebtedness, suit was brought against him by the plaintiff, judgment recovered, execution issued, and the tract in question levied on and sold. At that sale the plaintiff was the purchaser, and he now holds a deed for the premises. Both parties claiming through Howard, his title is not questioned. It is admitted that this tract of land was not required for the accommodation of the bank in the transaction of its business, and that the same was not mortgaged to the bank, but that the only title held by the bank was by virtue of the sale made under the decree already mentioned. The possession of the defendants is also admitted. The title depends upon the validity of the sale made to the bank under the decree. Could the bank become the purchaser of the lot in question at that sale? The bank was a corporation created by an act of the legislature of Illinois, passed 12th Feb., 1835, the 5th section of which was as follows: "The real estate which it shall be lawful for said bank to purchase, hold, and convey, shall be: 1st. Such as shall be required for its immediate accommodation in the transaction of its business; or such as shall have been mortgaged to it in good faith by way of security for loans previously contracted, for money due; or, 2d. Such as shall have been conveyed to it in satisfaction of debts previously contracted in the course of its dealings; or, 3d. Such as shall have been purchased at sales upon judgments, decrees, or mortgages obtained or made for such debts; and said bank shall not purchase, hold, or convey real estate in any other case, or for any other purpose," &c. The plaintiff contends that the purchase by the bank was made in violation of the express provisions of the charter, and was consequently void. It is admitted by the defendants, that it was contrary to the letter of the law, but it is insisted it comes within the equity of the statute, and even if this be not the case, the plaintiff is estopped from controverting the title of the bank.

By the common law every corporation had the right to purchase, hold, and convey real property. This right has been very much restricted in England by various statutes, passed from time to time, usually called statutes

of mortmain. In modern times the legislature generally prescribes some limits to the power of a corporation to purchase and claim real property, by the law of its creation. The charter is the source to which we must go to ascertain whether the corporation possesses a particular power. It is a principle universally acknowledged by all our courts that a corporation can only act in the manner indicated in its charter. Anything absolutely prohibited by its charter, if attempted to be done, is a nullity. The numerous authorities cited on the argument conclusively show this. New York Firemen Ins. Co. v. Ely, 5 Conn. 560, 566, 574; Head v. Providence Ins. Co., 2 Cranch [6 U. S.] 127; 8 Ohio, 288; 11 Ohio, 492; 9 Port. [Ala.] 467; 2 Kent, Comm. 298. Still, these authorities do not decide that we must give a narrow or illiberal construction to a charter; on the contrary, we must look to the object and intent of the law in this as in other cases, and so construe it as to carry out the object the legislature had in view in the enactment. And this very charter expressly provides that it shall be construed liberally for all beneficial purposes therein intended. But we must take it all together, and give effect, if possible, to all its parts. The land purchased by the bank in this case, was not for a debt contracted, directly or indirectly; the only ground upon which it has been put, is that the bank had a right to redeem the lands covered by its own mortgage, from the operation of the plaintiff's prior mortgage; that it could not redeem a part without paying the whole debt, and that the right to redeem implied the right to appear at the sale to protect itself, and prevent the property from being sacrificed; that being of the greatest importance to the bank. The object of the testimony is to show that the bank had no other motive than to protect itself, and save as much as possible from the wreck of Howard's estate, and that if the whole of the property were made available to the bank, there would yet remain a large deficit. The plaintiff had different parcels of land bound for his debt, some of which were included in the bank's mortgage. In such cases it is a rule well settled in equity, that the party who has the double fund shall resort, in the first instance, for payment, to that parcel which is not subject to the lien of the other party. The decree was in accordance with this rule. But did this give the bank the right to buy up land not included in its mortgage, for the mere purpose of saving the land which was included? We must look at the consequences of such a principle. In every instance where a man was indebted to the bank, it might be said, that in one sense, his ultimate ability to pay the debt would depend upon his property not being sacrificed. Suppose the case of an individual against whom judgment has been recovered, which is a lien upon his real estate, the bank holding

a subsequent judgment binding the same lands. The charter gives it the power, in terms, to buy the lands at judicial sales made on its own judgment; but because it is a judgment creditor, is it permitted to become a purchaser at the judicial sales had on other judgments, merely thereby to strengthen its own fund? The object of the legislature in inserting such a provision in its charter, was to confine the bank to its proper and legitimate business of banking, and to prevent it from becoming a great land proprietor. But while this may be admitted, it is plain that to sanction the practice mentioned, would be to allow the bank to evade an express provision of law, by the questionable method of intention. In other words, the test would be its intentions, and not its acts.

An authority has been referred to by the plaintiff's counsel, which is relied upon as conclusively settling the question against the validity of the bank's purchase—a recent case decided by the supreme court of New York. Chautauqua Co. Bank v. Risley, 4 Denio, 480. An examination of it will show how near it approaches the present case. There were various judgments binding the real estate of one Sexton. The bank was a judgment creditor. The lot in question was sold on an execution issued on a judgment of older date than that of the bank, and one White became the purchaser. There was a judgment between this older judgment, and those held by the bank. The bank assigned their judgments to a creditor who held a judgment subsequent to that of the bank. This judgment creditor redeemed the land from the first sale to White, in his own name, as well as in the name of the bank. The creditor who held the judgment prior to that of the bank's, assigned his judgment to still another judgment creditor, whose lien was of the same date as his who had redeemed. This last judgment creditor also redeemed the land from the first sale to White. But neither of these persons redeemed from each other. The person who redeemed first, assigned his interest to the bank, having acted as their agent. The person who last redeemed also assigned his claim to the bank, which thus, under the law, was entitled to a deed. The sheriff executed a deed to the bank, which recited that the bank had redeemed the land as judgment creditors of Sexton. Under these circumstances, the bank brought an action of ejectment to recover the possession of the land described in the sheriff's deed, and the question arose, whether the bank could purchase the land. The charter of the bank contained a restriction, similar, in all respects, to that in the charter of the State Bank of Illinois, and the prohibition as to real estate, was in the precise words of the charter of 1835: "The said corporation shall not purchase, hold, or convey real estate in any other case, or for any other purpose." The court decided that the

redemption of the land was only valid by virtue of the bank being the representative and assignee of the judgment next preceding its own, that being the prior lien. And, therefore, the bank was in no sense a redeeming creditor, whatever the sheriff's deed might say, or whatever was the understanding of the parties. The case was, then, the same as though the bank was the assignee of one who had purchased the land at sheriff's sale. The court held that the bank had not the legal capacity to acquire the title. For a much stronger reason the bank could not purchase directly at the sale itself. The same argument was used there that has been urged here, that the bank having other judgments against the land which might be lost unless saved by the benefit to be acquired by the purchase, the case was brought within the statute; but the court ruled otherwise, declaring that circumstance would not bring it within the terms or spirit of the law. But an intimation was thrown out that the bank might have had the power to redeem within the equitable construction of the law.

In the case just referred to, the bank was a subsequent judgment creditor, having a lien upon property bound by a prior lien. It did not redeem, but chose to purchase at a sale made or redemption had under the prior lien. It is a stronger case than this, in favor of the bank's right to purchase, because here the bank had no lien upon the lot in controversy. It had merely the equitable right of compelling the plaintiff to resort in the first place to the property not held by the bank. It is said, however, conceding that the bank could not purchase, hold, or convey the property; that is, that the sale was illegal, it will not follow, the title of the bank and of its grantees is invalid, so long as no action is taken on the part of the state; that it may be likened to the case of an alien. Formerly, an alien could not hold or inherit real property, but it has been decided that an alien could hold it till a proceeding was instituted on the part of the sovereign power to deprive him of it. This old rule of the common law is now, in many of the states, changed by legislative authority, and aliens can hold real property as well as citizens. Several authorities have been adduced to show that the same principle was applicable to corporations, as to aliens, and that under such circumstances, they, or the third person to whom they may convey, hold a title defeasible by the sovereign power alone. Baird v. Bank of Washington, 11 Serg. & R. 418; Banks v. Poitiaux, 3 Rand. (Va.) 136; Silver Lake Bank v. North, 4 Johns. Ch. 370. But in the case of the alien, and in the authorities cited, it was so decided because the alien and the corporation could take or purchase real estate. In Baird v. Bank of Washington, the prohibition was to purchase and hold, and the supreme court of Pennsylvania decided that the bank might purchase, but could not hold, as against the state alone. It was a defeasible title. In the case in Virginia, the prohibition was to hold, and the court of appeals decided the banks might purchase. If, however, the prohibition is absolute as to the taking or purchasing, there is an entire incapacity to acquire the title. In this case the bank could neither purchase, nor hold, nor sell real estate, except under certain circumstances. These circumstances do not appear to have existed in this case; consequently the State Bank did not acquire any title at the sale. Where, then, was the title? It still remained in Howard. It had not been divested. A title by deed implies a contract, or, at least, competent parties. A deed to a person having no existence is generally inoperative, and passes no title from the grantor. Even in the case of an escrow, the title remains in the grantor till the condition is complied with, and the deed delivered, when it will relate back for certain purposes to the time when it was delivered by the grantor as an escrow. If a man grant his estate to an imaginary corporation which exists only in his own mind, no title passes, and it is precisely the same if it is granted to a corporation rendered incapable by its charter of taking the grant. As to that particular faculty it is not a corporation.

But is is contended that the decree of foreclosure divested the title of Howard. The language of the decree is in the form usually adopted in such cases—that the party be forever barred from his equity of redemption. However it may be in some of the states, where the practice of strict foreclosure prevails, that is, where the mortgagee takes the premises without a sale, in Illinois, the uniform practice, both at law and in equity, is to order a sale. It was the course pursued in this instance. It is said, if the money had not been paid within the twenty days, it might have been in the power of the mortgagee to insist on a sale. But I doubt whether he would even have had that right upon the tender of the debt, interest, costs, &c., before the sale. But there can be no doubt, if the money had been paid by the mortgagor, and received by the mortgagee before the sale, it would have extinguished the debt and the mortgage, and no conveyance would have been necessary to vest the property in Howard. To show that this view of the case is correct, it is only necessary to inquire where the title was after the event of foreclosure. It was certainly not in abeyance, for that is never true except in certain specified cases, as where the title remains in that condition till there is a grantee capable of taking, or where there is to be a grantee, in futuro. If the decree vested the title anywhere, it must have been in the mortgagee, and that would not help the defendants. The modern authorities regard a mortgage merely as a security for the debt, and with us, until there is a sale of the premises under a judgment at law or decree in chancery, the

title is in the mortgagor; to say nothing of the right of the party to redeem even after sale. If the debt is paid, he can maintain ejectment; he is entitled to the rents and profits of the estate. He is, in a court of law, even, to all intents and purposes, the owner of the land, subject to the incumbrance. If the time for the payment of the money secured by the mortgage is elapsed, it can hardly be pretended, under the law as it now stands, the mortgagee can recover the possession of the land mortgaged even for the mortgagor. He must, in the first place, resort to a court of law or equity, to foreclose the right of redemption, and that is uniformly done by a sale. Besides, a court of equity usually requires a return or report to be made by the master or commissioner, of the proceedings, and in some respects, the whole matter may be considered as in fieri, until the acts of the master are approved or confirmed by the court. The decree in this case directed such a report to be made, and it was made accordingly. It is the sale, then, and subsequent proceedings, that divest the title. In this case there was not, in law, any sale of the property which is here the subject of controversy. The relaxation which has gradually taken place upon the subject of mortgages, under the slow but sure progress caused by an advance in the arts of civilization and refinement, is a striking illustration of the amelioration given, by modern decisions, to the stern and inflexible rules of the ancient common law. The law of mortgages is now administered in our courts upon principles of equity and justice, which commend themselves to all. There being, then, no sale under this decree, and the decree itself not having divested the title, it still remained in Howard.

But it is insisted, that the plaintiff cannot avail himself of these principles, because, having received the money from the bank, sound policy requires that he should not set up the illegality of the sale, and the incapacity of the grantor, to defeat the title of the bank. The court has nothing to do with the propriety or delicacy with which parties may act. It can only look to their rights and their remedies. The question is, Is the plaintiff estopped by the mere receipt of the money under the circumstances of this case, from contesting the sale to the bank?

A very brief examination of this branch of the law will furnish us with an answer. It is not pretended that it is a case of technical estoppel by matter of record, or by deed; but it is said, it is an instance where the law of equitable estoppel, in pais, applies. The law of this last species of estoppel was fully investigated in a recent case in New York.—Dezell v. Odell, 3 Hill, 215. The court differed in opinion as to the application of the law to that case, which was, where a party had given an officer a receipt for goods seized on execution, promising to deliver them up on a certain day, and afterwards claimed them as his own; the majority of the court held he was estopped by his receipt. The court, however, agreed that the definition of an estoppel, in pais, given by Judge Nelson, in the case of Welland Canal Co. v. Hathaway, 8 Wend. 483, was correct: "A party will not be permitted to deny his own acts or admissions which were expressly designed to influence the conduct of another, and did so influence it, and when such denial operates to the injury of the latter." There can be no doubt, that while the courts in recent times have been inclined to restrict the law of technical estoppel, they have much enlarged the limits of the law of equitable estoppel. But let us take the most liberal view of estoppel in pais possible, and apply it to this case. What act did the plaintiff do, or what admission did he make, which was designed to influence the conduct of the bank? How was it influenced by the plaintiff? Granting that the plaintiff's denial of the right of the defendants to the property, may operate to the injury of the bank, the other ingredients, and the essential ones, of an estoppel in pais, are entirely wanting. So far from the bank making the purchase influenced by anything on the part of the plaintiff, it appears that they (the plaintiff through his attorney, the plaintiff himself not being present at the sale) were competitors at the sale in bidding, and it was only because the bank bid more than the plaintiff's attorney, that it became the purchaser. Was the plaintiff bound, through his attorney, to inform the bank that it could not legally become the purchaser? Certainly not. It does not appear that the slightest act was done on the part of the plaintiff to induce the bank to buy. Admitting that a case could be so presented that the doctrine of estoppel in pais, would apply, so as to enable the bank to hold land not authorized by its charter—as to which I express no opinion—it would have been necessary for the plaintiff to design expressly to influence the bank in this pretended purchase; and there cannot be the least pretext of anything of the kind on the part of the plaintiff. It can, in no sense, be considered the same as if the plaintiff had himself sold land to the bank.

It only remains to consider whether the mere fact of receiving the money estops the plaintiff from denying the validity of the sale, and of the title of the bank; and it would seem as though the mere statement of such a doctrine were enough to show its unsoundness. A has a judgment against B. The officer under the execution issued upon the judgment, levies on and sells the land of A, the plaintiff. He receives the money. It is said he is estopped from denying the title of the purchaser, and proving that it was his own land that was sold. This would be the result of the doctrine, even if it did not go further, and by implication, make every plaintiff in an execution, when he receives the purchase money, a guarantor of the pur-

chaser's title. This is a construction of the law of estoppel in pais which this court cannot sanction. It follows, then, that it is immaterial whether the depositions were admitted or excluded, as, upon the facts which have been submitted to the court as agreed on between the parties, the law of the case would be the same in either event.