LEWIS BUFFETT, Respondent, *v.* THE TROY AND BOSTON RAIL-
ROAD COMPANY, Appellants.

A railroad company, authorized by its charter, to construct and operate a
railroad between T and the State line at P, had constructed and was oper-
ating such road. On the line of the road, was a station S, distant about a
mile from the village of S. The railroad company hired one D, for a daily
compensation, to run stages between the village and the station, carry-
ing passengers to and from the railroad. D was supplied by the company
with, and sold railroad tickets from S station to the various points on the
railroad, generally when passengers arrived at the station, though, some-
times, while they were on the stage. The plaintiff, intending to proceed to
T, by the railroad, got on board D's stage, at S village, and, by his direction,
took his seat on the outside, the inside being' full. On its way to the
station, the stage was negligently overturned and the plaintiff seriously
injured. He had, at the time, bought no railroad ticket. In an action
against the railroad company, to recover for these injuries—*Held* (JAMES,
J., dissenting), that, from these facts, a jury were authorized to find, that
the plaintiff had, at the time of the accident, become a passenger for
transportation, by the railroad company, to T, and was entitled to the
protection and care from them due to a passenger.

*Held* further (JAMES, J., dissenting), that whether the contract by the rail-
road company, to transport passengers by stage, outside of their line, was
*ultra vires* or not, they were liable for the consequences of their *negligence*,
in executing such contract.

*Bissell* v. *Michigan Southern and Northern Indiana Railroad Company*
(22 N. Y., 258), followed.

(This cause was argued on the 15th day of January, 1869, and decided on
the 20th day of March, 1869.)

THIS action was brought to recover damages for injuries
sustained by the plaintiff, by the overturning of a stage
sleigh employed by the defendant, for the purpose of convey-
ing passengers to and fro between the village of Schaghti-
coke Point, and the Schaghticoke Station, on defendant's
railroad, distant about a mile from the village.

The defendant was an incorporated company, authorized to
construct, and operate a railroad from the city of Troy, to the
State line of Vermont, at or near Pownal. Such railroad
passes about a mile from the village of Schaghticoke Point,

at what is called Schaghticoke Station. Passengers on defendant's railroad, going to or from the village of Schaghticoke Point had, ever since the opening of the road, been conveyed in omnibusses, stage wagons, or sleighs, which, in going to the trains, ordinarily started from the upper end of the village, and passed down through the main street, stopping along for passengers. The conveyances used for this purpose were furnished by John Downs, who was, together with his conveyances, horses, and servants, hired by the defendant, at a daily compensation, to carry passengers between the village and the station, and was in the defendant's employment for that purpose, at the time of the occurrence, out of which this action arose.

On the day of the occurrence (March 11th, 1857), the plaintiff took passage at the lower end of the village of Schaghticoke Point, on the stage sleigh, then driven by one of Downs' men, for the purpose of coming to Troy by defendant's railroad. As the sleigh stopped, the driver told the plaintiff that it was full inside, and he (plaintiff) got on the outside.

The defendant had no ticket office at the village of Schaghticoke Point; but Downs sold tickets. Passengers generally purchased their tickets of Downs after reaching the depot, but, sometimes, at the village. The plaintiff had not purchased one on that occasion. Between the village and the depot, the sleigh was overturned, and the plaintiff received the injuries, for which this action was brought. No question is now made, but that the driver was guilty of negligence, which was the immediate cause of the overturning of the sleigh, nor that the plaintiff thereby sustained severe injuries.

When the plaintiff had rested, the defendant moved for a nonsuit, on the following grounds:

1. That there was no proof of a contract to carry plaintiff as a passenger.

2. No money having been paid by plaintiff nor information given by him, that he designed to be a passenger, he did not become such, and defendants were not bound to him by contract or duty, and are not liable for the injuries in question.

3. Defendants are common carriers only by railroad, and had not power, under their charter, to contract to carry plaintiff from Schaghticoke Point, by stage, to Schaghticoke Station; and such contract, if made, is illegal and void.

4. Defendants are not estopped from denying the obligation of a contract, which they had no power to make.

The nonsuit was denied, and the defendants excepted. The motion was renewed at the close of the evidence, on the same grounds, again denied, and the defendant again excepted.

The court, among other things, charged the jury:

1. That the defendant had a right to employ Downs, and his vehicles, to transport passengers from Schaghticoke Point to the Station, and from the Station to the Point, and that this was *legitimately* connected with their business of railroad transportation. The defendants excepted.

2. That the defendant might lawfully contract to carry railroad passengers from Schaghticoke village to the Station, and might lawfully employ stages for such purpose. The defendants excepted.

3. That it was a question of fact for the jury, whether the plaintiff became a passenger with the defendants, and the burthen of proof was with the plaintiff.

The jury rendered a verdict for $450, damages, upon which judgment was perfected on the 22d of June, 1860.

This judgment was affirmed by the General Term of the third district, and the defendant now appeals to this court.

*John H. Reynolds,* for the appellant.

*William A. Beach,* for the respondent.

HUNT, Ch. J. The objections, in their various forms, resolve themselves into two inquiries: 1st. Was there evidence, sufficient to be submitted to the jury, that the plaintiff had become a passenger with the defendants, under an agreement, express or implied, for his transportation? 2d. Could the defendants lawfully enter into such an agreement, under the circumstances stated?

On the first question, the facts are as follows: That the defendants run this stage sleigh to carry passengers, between the station at Schaghticoke and the village of the same name, about one mile distant; that it was the practice to start the stage at the upper end of the village, picking up passengers as it proceeded down the street; that the driver was furnished with railroad tickets, by the company, and sold them to passengers, usually, after their arrival at the station, but sometimes at the village; that the plaintiff, on this occasion, rode on the sleigh towards the station, for the purpose of taking a passage to the city of Troy, but was injured before reaching the station.

This stage was a part of the transporting arrangements of the defendants, in connection with their railroad. That was its sole purpose. It was one link in the chain of passenger carriage, between the village of Schaghticoke and the other towns on the line of the defendants' road. It is, no doubt, the law, that one taking his seat in a railroad car, for transportation, becomes a passenger, entitled to full protection in his rights as such, from the starting of the car, although he has not purchased a ticket or paid his fare. He is bound to pay whenever called upon by the collector, and taking his seat, thus to be transported, is evidence of an agreement, on his part, to be thus transported, and of a promise to pay the legal demand therefor. (22 N. Y. R., 307; 15 N. Y. R., 444.) It is no answer to this to say, that he has not formally announced to the company that he wished to become such passenger, or that he has not stated to what point he wished to be carried. This information may be communicated to the company when the call is made by the collector for the fare; and his continuance in the conveyance, is evidence that he certainly wishes to go farther than he has gone when he is thus called upon. It is also evidence of his promise to pay for such further transportation. The plaintiff's position was the same, as if he had been in the railroad car of the defendants. He was in the conveyance provided by the defendants, in connection with their cars, and, by which, a journey from the

village of Schaghticoke to the city of Troy might be completed. This was the purpose for which he started, as he testified without objection. I think these facts justified a submission to the jury of the question, whether the plaintiff had become a passenger with the defendants under an agreement for transportation, and that the verdict of the jury on that question cannot be assailed.

The next question is, was it within the power of the defendants to make such an agreement? The objection is made, that the defendants, being incorporated to carry passengers between Troy and Pownal, have no power, or authority, to enter into contracts for transportation on, or over, any territory not included between those points, and that their authority is to transport by railroad, and not by stage. These objections have been fully considered in the cases already decided in this court. *Hart* v. *The Rensselaer and Saratoga R. R. Co.* (4 Seld., 37), decided, that where a company made a contract for transportation of persons and property, beyond its own line, and over the line of another company, it was responsible for a failure to perform such contract. *Quimby* v. *Vanderbilt* (17 N. Y., 306), is to the same effect. The action, however, was against an individual, and not against a corporation. In *Bissell* v. *The Michigan Southern and N. I. R. R. Co.* (22 N. Y. R., 258), where a passenger was injured, upon being transported beyond the authorized lines of the defendants, the same result was reached. Elaborate opinions were delivered by COMSTOCK, Ch. J., who held that the defendants were liable upon the contract specifically, as a contract; and by SELDEN, J., who held the contract to be *ultra vires* and void, but that the defendants were liable for their negligence, independent of any existing contract. Without settling upon which ground the liability should be placed, the court had no difficulty in determining that they were liable. The case, therefore, is a clear authority in favor of the plaintiff here. (See, also, *Cary* v. *Cleveland and Toledo R. R. Co.*, 29 Barb., 35; *Weed* v. *S. and S. R. R. Co.*, 19 Wend., 534.)

There can be no room for doubt on these cases, that where

a corporation undertakes a transportation beyond its chartered line of railroad, and an injury to the person occurs, through the negligence of their agents, that the corporation is liable in damages. Whether this injury occurred upon another railroad track, or upon a common road used by them in the same business, would seem to be quite unimportant. The principle being established, that they are liable for injuries occurring at the point in question, all else follows. A break or loss of a bridge, often compels a railroad company to transport its passengers a short distance, by stage or boat, around the obstruction. It could not be successfully contended, that they were not bound to care in this transportation, or that they were not responsible for the want of it.

Judgment should be affirmed with costs.

JAMES, J. (dissenting.) The complaint averred, that the defendant was a corporation, created by the laws of the State, and carriers for hire of passengers and freight in and by railroad, and other conveyance, owned and employed for that purpose; that for the purpose of conveying passengers, coming from and going to the village of Schaghticoke, by or on said defendant's railroad, it did use and employ a stage drawn by horses, to convey such passengers to and from the station nearest said village, about one mile distant; that said stage was wholly under the control of said defendant; that in March, 1857, the plaintiff entered and became a passenger in said stage, with the intention of being carried from said village to Troy, at and for the regular fare charged therefor; that plaintiff, then and there, undertook to pay said fare; and that defendant assumed, and undertook to carry said plaintiff by said conveyance and cars, and plaintiff then and there became a passenger. That defendant not regarding its undertaking, did negligently conduct the said stage, whereby it was overturned, and plaintiff injured, &c. The answer was a denial.

When the plaintiff rested his case, the defendant moved for a nonsuit, on the grounds:

1st. That no contract, express or implied, had been proved between the parties.

2d. That the defendant was a common carrier only when transporting freight or passengers on its road, and had not legal capacity or power under its charter to contract to carry the plaintiff by stage from Schaghticoke to the railroad station, and that any such contract was void.

The motion was overruled, and a verdict was taken for the plaintiff, upon which judgment was entered. That judgment having been affirmed at General Term, the defendant appealed to this court.

The questions in this case arise on the motion for a nonsuit. In considering them, the proof is to be taken most strongly against defendants. Thus considered, these facts must be regarded as established. That the defendant is a corporation, created by the laws of this State, authorized to construct a railroad from Troy to the State line, and operate the same in the transportation of freight and passengers; that its road approached within about a mile of Schaghticoke village, at which place it had a station; that it had a contract with one Downs to transport, by stage, its passengers to and from the station and village; that in March 1857, the plaintiff got upon one of said stages on its way from the village to the station, without purchasing a ticket for the cars, although Downs had tickets for sale, intending to take the cars at the station for Troy; that on the way to the station, the stage was overturned by the negligence of the driver, and the plaintiff injured; that the plaintiff did not then take the cars, nor did he at that time become a passenger on the cars; or pay, or offer to pay, the defendant for his ride on the stage, or on the cars.

The first question is, was there any contract, express or implied, established by the proof? This line of stages had only been chartered by the defendant, to take its passengers to and from the station, without fare; not to take travelers, or persons desiring to pass between the village and station simply with or without pay. The plaintiff was not such a

passenger; he had not purchased a ticket entitling him to the rights of a passenger on the railroad, nor had he entered upon the cars, whereby he became liable to pay, so as to establish between him and the corporation the conventional relation of passenger and carrier. If it was conceded that the charter of this stage was within the incidental powers of the corporation, it could only reach to the transportation of its passengers, for an incidental power is only that which is directly and immediately appropriate to the execution of the specific powers granted by the act; hence, until the conventional relation was established, the plaintiff had no right upon that stage as against the defendant, and the defendant owed him no duty.

As a passenger between the village and station, simply, he was not a passenger of the defendant. It had not chartered the stage for such purpose; it could not legally engage in such traffic; the plaintiff did not pay for such passage, and the defendant could not compel payment; the right of compensation for such ride belonged to the stage proprietor, not to the defendant, as the service was outside the charter of defendant. The plaintiff's intention of becoming a passenger was not sufficient. It was still at his option, whether he would, or would not, enter upon defendant's cars. Had he arrived safe at the station, and then seen fit to ride back to the village, he would have violated no contract, express or implied, with the defendant. The plaintiff bases his action entirely upon contract arising from his relation to the defendant by reason of being upon a stage, which it had chartered to carry a particular class of persons; but as he was not one of that class, and, as against the defendant, had no right upon the stage, and as no express or binding agreement was proved, none can be implied; therefore, the plaintiff entirely failed to make out a cause of action against the defendant.

The defendant, however, further insisted that the corporation had not power to enter into a contract to carry passengers by stage, even between the station and village. On the other side, it is insisted that this business of transporting pas-

sengers at this place, was one of the incidental powers of the corporation, and if not, that defendant is estopped from denying the binding obligation of the contract relied on.

This case does not involve the question as to the power of railroad corporations to form connecting lines, and their liability thereunder, as common carriers, beyond the line of their roads.

The special charter under which the corporation defendant was created, authorized it to construct and operate a railroad. By the general statute it had the power of succession, of suing and being sued, of using a common seal; the right to purchase, hold and convey real and personal estate, as its purposes required; to appoint officers and agents, and make by-laws; and in addition to the powers thus enumerated and expressly given, by its charter, the statute declares that no corporation shall possess or exercise any powers, except such as are necessary to the exercise of the powers so enumerated and given. (1 R. S., 599, § 173.)

Much is claimed for corporations under this last clause of "necessary powers;" they are usually denominated "incidental powers." But it is not every act of a corporation outside of its declared powers, that can be classed as incident to the purposes of its creation. As I have said, before, "an incidental power is one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has a slight or remote relation to it." (*Hood* v. *N. Y. and N. H. R. R. Co.*, 22 Conn., 1.)

"Surely, running stages and steamboats, are not necessary to the execution of the specific power given to the defendant." Perhaps by such means, a few more passengers might be obtained to travel upon the railroad, and the public at that place might be better accommodated; but stages and steamboats are not necessary to enable the corporation to run its cars over its road. When the passengers of defendant pass off the line of its road, they pass beyond its jurisdiction, and the company could no more contract to carry them one mile by stage than it could one hundred miles. The

question is not one of degree, but of power. "If a railroad corporation could run a line of stages, as incident to its business, because it would facilitate its passenger traffic, it might run a saw-mill on the line of its road as well, because it would increase its lumber freight."

Transporting persons or property by stage is not among the powers given this defendant by its charter, nor enumerated within the general statute, or necessary to the exercise of those powers. Chartering this stage, even for transporting its passengers to and from the station and village, was in excess of its powers; and was particularly so, if the charter was for general purposes. In either case, the contract was *ultra vires* and void.

Justice SELDEN says, in *Bissell* v. *M. S. and N. I. R. R. Co.* (22 N. Y.): " The real ground upon which *ultra vires* rests, and the only one upon which it has, to any extent, been judicially based, is, that contracts of corporations which are unauthorized by their charters are to be regarded as illegal, and therefore void." " That there are three classes of illegal contracts; *mala in se, mala prohibita,* and in contravention of public policy; and that contracts of corporations not authorized by their charters are illegal, because they are made in contravention of public policy; and contracts, which do in reality contravene any principle of public policy, are illegal and void."

" The public have an interest in railroad corporations; they are regarded as public institutions; are endowed by the legislature with valuable franchises, and important privileges, which give them great advantages over individuals; and as the public has an interest in their creation, so it has equally an interest in the nature and extent of the powers conferred, and is deeply interested in their being confined to the exercise of their legitimate powers," " Every additional power usurped by a corporation, extends its advantages over persons unincorporated. If a bank is permitted to trade in merchandise, it comes in competition with others so employed. If a railroad company is permitted to build and sail ships, it comes,

in competition with others engaged in commerce ;" or, if permitted to run stages to and from its road, it comes in competition with others engaged in conveying passengers by stage; and so of every other class of business.

The importance of limiting the powers of corporations was appreciated and acted upon by the legislature, and the courts should not, by nice and subtle distinctions, or loose construction, fail to keep these soulless institutions within the limits fixed by the acts creating them.

It is claimed, that the defendant, having engaged in the business of staging, and having entered into the contract with the plaintiff, is estopped from denying the binding obligation of such contract. When an action is brought by a third person, against a corporation, to enforce its contract, and the contract is one, in which its want of power would be apparent, by comparing the contract with the terms of its charter, the party dealing with the corporation, is presumed to have knowledge that the contract is not within the provisions of its charter; and, in such case, the defence of *ultra vires*, is admissible, and available. This principle is distinctly sustained in *Safford* v. *Wyckoff* (1 Hill, 11.) That was an action against the defendant, as the president of a bank, organized under the free banking act of 1838, upon a time draft drawn upon a New York bank in favor of one Dodge, and indorsed to the plaintiff. The Supreme Court held, 1st. That the bank had no authority to issue drafts on time; and, 2d. That such fact constituted a good defence to the action. The case was afterwards reversed by the court for the correction of errors (4 Hill, 442), but upon the ground that the bank had power to issue such drafts. Its reversal, however, in no manner affected the other point.

In *McCullough* v. *Moss* (5 Denio, 567), the court for the correction of errors held, that a corporation could not be bound by its agents for acts not within the powers conferred upon it by its charter; that such acts were void. So in *Leavitt* v. *Palmer* (3 Comst., 19), a case with which the bench and the bar of this State are quite familiar, the question was

distinctly presented, whether a corporation could avoid its own contract, by showing that it was made in contravention of the provisions of a public statute, and it was held that the notes sought to be enforced, having been issued in violation of law, were illegal and void, and could not be enforced against the company. (See, also, *Talmage* v. *Pell,* 3 Seld., 528.)

I am, therefore, of the opinion :

1st. That because the conventional relation of passenger and carrier never existed between the plaintiff and defendants, no contract, express or implied, was established.

2d. That the charter of the stage, as proved in this case, was not authorized by defendants' charter, was not within its powers, and therefore, the acts of its officers in making such contract, was *ultra vires* and void.

3d. That the corporation may avail itself of such invalidity as a defence.

4th. That the plaintiff should have been nonsuited.

Judgment of the General Term and of the Circuit reversed; and new trial ordered.

All the judges for affirmance except JAMES, J.
Judgment affirmed.

NOTE.—Judge REDFIELD in his recent work upon Carriers (page 157, *et seq.*), cites, as establishing the doctrine that railway companies chartered to transport goods and passengers, by rail, between certain points, may make valid contracts to carry beyond the limits of their own road, either by land or water, *Noyes* v. *Rutland and Burl. R.* (27 Vt., 110); *Muschamp* v. *Lancaster and Preston Junction Railway* (8 M. & W., 421); *Weed* v. *Saratoga and Schenectady R. R.* (19 Wend., 534); *Hart* v. *Rens. and Sar. R. R.* (4 Seld., 37); *Schroeder* v. *Hudson River R. R.* (5 Duer, 55); *Wilby* v. *West Cornwall Railw.* (2 H. & N., 703); *Malpas* v. *Southwestern R.* (Law Rep., 1 C. P. 336); *Wheeler* v. *San Fran. and Alta R.* (31 Cal., 46); 19 Wisc., 118; 2 Duvall, 4; 20 Wisc., 122; 9 Iowa, 487.

In the case of *Bissell* v. *Mich. South. and North Indiana R. R.* (cited in the opinions *supra*), the question, whether a contract unauthorized by the charter of a railroad company, made with an innocent party, was void, and its invalidity a defence to the company, in an action *upon it,* was not decided. COMSTOCK, Ch. J., in an elaborate opinion, came to the conclusion that it was not void or a defence. SELDEN, J., on the other hand, held that it was, but was for sustaining the defendant's liability for the consequences of their servants'

*negligence*, on the ground that the plaintiff, being *within their cars* by their consent, and therefore not a trespasser, they were liable to him, while so there, for any injury occasioned by the negligence of their agents, independently of any contract between them. This latter basis of liability was, however, expressly rejected by COMSTOCK, Ch. J.

In the prevailing opinion in the present case, the Bissell case is treated as decisive in favor of the plaintiff here, whichever of these two opinions should be regarded as a correct exposition of the law. It unquestionably is, if that of COMSTOCK, Ch. J., is sound. The cases could, perhaps, be distinguished, however, if the views of Judge SELDEN were to be regarded as controlling the result of that case. The opinions of both learned judges review a number of the English and American decisions on the subject of *ultra vires* contracts.

Quite recently, the general question has received great consideration in the English courts. The views taken by Judge SELDEN, as to the complete illegality and invalidity at law, as to all parties, of contracts made by corporations clearly beyond their corporate powers, have been, in the main, confirmed in the late case of *Taylor* v. *C. M. Railway*, decided in the Exchequer Chamber. (Law Rep., 3 Exch., 356.) It was there held by a majority of the court, that a contract *ultra vires*, entered into by a corporation, was *void* and could not be enforced by any one; and it was said, that the case in the House of Lords, *Eastern Counties Railway* v. *Hawkes* (5 H. L. C., 347), assumed by Judge COMSTOCK, in the Bissell opinion, to have substantially overthrown them, had not at all shaken or qualified the former very strong cases of *East Anglian Railway* v. *Eastern Counties Railway* (11 C. B., 775); *McGregor* v. *Dover, &c., Railway* (18 Q. B., 618).

See, also, *Earl of Shrewsbury* v. *North Staffordshire Railway Company* (Law Rep., 1 Eq., 593); *Gage* v. *New Market Railway* (18 Q. B., 457); *Preston* v. *Liverpool, &c., Railway* (5 H. L. C., 605); *Shrewsbury, &c., Railway* v. *North Western Railw.* (6 H. L. C., 113).

As to what contracts, with reference to running steamboats and coaches beyond the lines of their road, are *ultra vires* the powers of a railway company, besides the cases cited in Redfield, see *South Wales Railway Company* v. *Redmond* (10 C. B. N. S., 645, 685, 686); *Coleman* v. *Eastern Counties R.* (10 Beavan, 1).