HARRIET ARNOT, EXECUTRIX, AND OTHERS, EXECUTORS, ETC., RESPONDENTS, *v.* THE ERIE RAILWAY COMPANY, APPELLANT.

*Corporation — power of, to guarantee bonds of another company — estoppel.*

The defendant, in pursuance of an agreement made with the Boston, Hartford and Erie Railroad Company, guaranteed the payment of the interest of certain bonds issued by the latter company. Subsequently these bonds came into the possession of the defendant, and some of them were by it, for a valuable consideration, sold and transferred to the plaintiffs' testator. In an action brought to recover interest falling due on such bonds, *held,* that the defendant, having itself transferred the bonds and received the avails thereof, was estopped from denying its liability upon its guarantee of the coupons.

APPEAL from a judgment in favor of the plaintiffs, entered on the findings of the court, in a case tried without a jury.

*D. C. Robinson,* for the appellant.

*Murdock & Stevens,* for the respondents.

JAMES, J. :

This action is to recover interest coupons, due on bonds of the Boston, Hartford and Erie Railroad Company, guaranteed by the defendant. The action was commenced by the plaintiffs' testator in his lifetime; on his death the plaintiffs, as executors, were substituted in his stead, and the action proceeded in their names. The answer to the complaint raises only the question of the validity of the guarantee, alleging it as unauthorized and void.

The facts, as they appear from the pleadings, the evidence and

the findings, are as follows :   The defendant is an existing railroad corporation, created by the laws of this State, owning and operating a railroad from the cities of New York and Newburgh, on the Hudson river, to Lake Erie.   The Boston, Hartford and Erie Railroad Company was also a railroad corporation, which, under the laws of Connecticut, sanctioned by the laws of Massachusetts, owned and operated a railroad from Waterbury, Connecticut, to the city of Boston, and under authority of the laws of New York was authorized to construct and operate a railroad, to connect with said other railroad, terminating at Waterbury, to the Hudson river, at Fishkill, opposite to Newburgh.

On the 8th day of October, 1867, these two railroad corporations entered into an agreement, whereby the former agreed to guarantee the semi-annual payment of interest on a certain number of mortgage bonds, to be issued by the latter, in consideration that, as soon as any part of its road between Newburgh and Boston was completed and in operation, so as to afford a business connection, all business passing from one road to the other, should be done on joint account, receipts to be apportioned, etc.   Upon the strength of said agreement, certain bonds were issued by the Boston Hartford and Erie corporation, as contemplated by said agreement, and the coupons attached to said bonds were guaranteed by the defendant.   These bonds and coupons were negotiable.   The defendant subsequently became possessed of all the bonds, the coupons of which it had guaranteed; and the bonds with the coupons attached and guarantee thereon, now in suit, were, by the defendant transferred, for value, to the plaintiffs' testator.   Said coupons were regularly paid as they became due, by the defendant, up to July, 1869.

In the statement preceding defendant's points, something is said as to the manner in which the findings of the Circuit judge were made up and obtained; but nothing of the kind appears in the case ; the affidavit cited by counsel fails to sustain the imputation ; hence this court cannot, as requested, send the case back for retrial. If there was ground for the imputation, the matter should have been presented by affidavit and motion.

The one question presented by this case is the power of the defendant to guarantee the coupons attached to the bond of another

railroad corporation.   No question is made as to the form of the act, or whether the other corporation had power to enter into the contract which formed the consideration of said act.   Neither does the question whether the agreement was wise or unwise, enter into the consideration.   The defendant's counsel takes the broad ground that any "contract or undertaking on the part of a corporation beyond the scope and limit of the express and *implied* powers conferred upon it by law, is illegal and void," and that such an act as the one in question is not among the express or implied powers of the defendant.

The question then is, what powers may be implied as belonging to the defendant corporation.   As a railroad, it was authorized to contract for the transporting of freight and passengers; not alone to be taken up and set down upon its own road or within its termini, but to and from any point beyond its road.   To that end it has been held that a railroad corporation, for the purpose of further- ing and promoting its business traffic, may, unless expressly forbid- den or restricted in its charter, contract with other corporations for the use of each other's road, or combine their business, so long as they do not form a copartnership.   The English courts have held that an agreement between two railroad corporations, whereby one was given the use of the other's road for a proportion of the rates and fares, allowing one company to fix the rates, is not void. (*M. R. Co.* v. *G. W. R. Co.*, Law Rep. [8 Ch. App.], 841.)   And so an agreement between two companies to share the profits and expenses, so that the arrangement is not a partnership, is not *ultra vires.*   (Brice on *Ultra Vires*, 282, 291, and cases cited ; 9 Exchequer Reports, 642.)

In this State such contracts were authorized as early as 1839.   A statute of that year enacted that "it should be lawful thereafter for any railroad corporation to contract with any other railroad cor- poration for the use of their respective roads, and thereafter to use the same in such manner as may be prescribed in such contract," etc. This statute has not been repealed expressly or impliedly by any subsequent acts; on the contrary, all subsequent legislation has tended to promote and encourage business connections and inter- changes of traffic between railroads, not only in this State, but with other States, when a continuous line can be formed by such con-

nections.   In fact, this principle was recognized by an act of Congress, passed in 1866.   (See U. S. Revised Statutes, p. 1022.)

The contract between these two corporations must be regarded as made for the purpose, and with the intent of promoting interchanges of traffic and business.   It is to be inferred as made in good faith and for the benefit of both.   As such combinations are not against public policy, the authority in the defendant to make it should be regarded as among its implied powers.

Having the power to do the act, the manner or form of doing it is not made a question.   Neither does the question of performance by the Boston, Hartford and Erie corporation arise.   Having lawfully put its name to negotiable instruments, and they having passed into the hands of third parties, for value, the defendant cannot shelter itself under a non-performance by the other party. Assuming the defendant had the power to make such contract, it might make its obligation to pay in any form it saw fit.   (*Curtis* v. *Leavitt*, 15 N. Y., 9; 35 id., 506; 27 id., 560.)

Again, as there is nothing in the charter of defendant prohibiting it from entering into a contract like this with the Boston, Hartford and Erie Railroad Company, and no steps having been taken by the sovereign power for annulling its charter, it does not lie in its own mouth "to say that the contract into which it had entered, was void as beyond its capacity."   (40 N. Y., 168; 4 Johns. Ch., 370; 22 N. Y., 226; 46 id., 644.)

There is another view of this case on which, it seems to me, this judgment should be sustained, irrespective of the question whether the defendant was authorized to guarantee the coupons of another corporation or not.   It appears from the case and the findings, that the bonds to which were attached the coupons in suit, with the guarantee thereon, were transferred by the defendant to the plaintiffs' testator for value.   Defendant had capacity to borrow money or purchase property, and give its obligations in payment, or guarantee obligations of others, held by it, in payment.   The defendant, therefore, became liable to plaintiff as upon its own original obligations, irrespective of the origin of the bonds; and it cannot now repudiate that obligation.   Having transferred the bonds itself, and received the avails thereof, the corporation must be held as estopped from denying its liability upon its guarantee

of the coupons.   (15 N. Y., 502, 95; *Remsen* v. *Graves*, 41 id., 471; *Bissell* v. *M. S. and N. I. R. Companies*, 22 id., 258; *Parish* v. *Wheeler*, id., 494; *St. John* v. *Roberts*, 31 id., 441.)

The judgment should be affirmed.

LEARNED, P. J., and BOARDMAN, J., concurred on last ground, but expressed no opinion as to first ground.

Judgment affirmed.