the provisions of the second and third clauses of the testator's will together, that it was his intention not to vest the absolute ownership of any part of his estate in his grandson, unless he arrived at the age of 21 years; that during his minority one-sixth of the estate should be held by the executors in trust to be kept invested, and the income, or so much of the principal as might be found necessary, should be applied to the minor's support, and, if he should die before arriving at majority, without leaving issue, then that the share should go to the testator's five children. The decree should, therefore, provide that this share be retained by the executors as trustees, to be administered as provided by the will. The special guardian also asks for a direction providing for the payment of the accrued income on this share to the guardian of the minor. Such a direction, I think, would have no proper place in the decree. The application of either principal or income, or both, to the support of the infant, is confided to the trustees. If their discretion in that respect is abused, a proper application on behalf of the infant can be made in a subsequent proceeding. Present decree on notice of settlement. Decreed accordingly.

---

(24 Misc. Rep. 76.)

BURKETT v. NEW YORK CENT. & H. R. R. CO.

(Franklin County Court.. June, 1898.)

CARRIERS—LOSS OF BAGGAGE—LIABILITY.

 Through fraud and deceit, the owner induced a carrier to gratuitously transport his trunk to a certain place, and on its arrival neglected to remove it, though he had ample opportunity to do so, and requested the carrier's agents not to place it inside the depot. It remained on the station platform over night, and was broken into and its contents stolen. *Held,* that the carrier was not liable.

Appeal from justice court.

Action by John Burkett against the New York Central & Hudson River Railroad Company in justice's court, to recover the value of the contents of a trunk. There was a judgment for plaintiff, and defendant appealed. Reversed.

M. E. McClary, for appellant.

J. W. Webb, for respondent.

BEMAN, J. The defendant operates a line of railroad extending from New York City to Loon Lake and beyond. On the 7th day of October, 1897, the plaintiff was in the employ of the defendant as a laborer upon defendant's road. Upon that day he quit defendant's employ, and remained at Loon Lake station until about the 18th day of October, upon which day he caused his trunk to be checked at Loon Lake station for Tupper Lake Junction without first having purchased a ticket for his own passage between said stations. The trunk was transported upon the regular passenger train of defendant to Tupper Lake Junction station, and safely landed upon the platform. The plaintiff did not take passage to said station on the same train that carried the trunk, but waited until a later hour in the day, and then

boarded a freight train at said Loon Lake station, and, having stated. to the conductor that he was working on the section between Loon Lake and Plumadore, and that he was being transferred to work for Mr. Black, the roadmaster, on the work train out of Tupper Lake Junction station, and that he was still in the service of the defendant, was permitted to ride upon said train without the payment of the regular fare between those stations.

It appears from the evidence in the case that the plaintiff had not been in the employ of the defendant since the 7th day of October previous, and was not in the employ of the defendant at the time he went to Tupper Lake Junction. Upon plaintiff's arrival at Tupper Lake Junction, at about 7 o'clock in the evening, he saw his trunk standing on the platform, apparently in good condition. The plaintiff's lodgings or boarding place while at Tupper Lake Junction was but a short distance from the railroad station, and from the evidence in the case, independent of any directions or instructions given by plaintiff to defendant's agent at Tupper Lake Junction, it appears that the plaintiff had ample opportunity for seeing, and did see, two or three times during the remainder of the night, that his trunk still remained upon the platform where it had been placed immediately after it was delivered from the railroad train. Moreover, it appears by the evidence of the telegraph operator and night watchman at the station, Mr. Getman, who was called as a witness by the plaintiff upon the trial of the action, that he saw the plaintiff upon the arrival of the train or very shortly after, and that he called witness' attention to the trunk, and remarked that "the trunk was his, and to leave it there, and he would be over after it in a short time." It is evident from this remark of the plaintiff that he did not purpose and it was not his intention to subject the trunk to any further care by the defendant. Acting upon the directions given by plaintiff in that regard, and which are confirmed by the conductor of the train which brought plaintiff to Tupper Lake Junction, and who heard the conversation between the witness Getman and the plaintiff, the agents or employés of the company did nothing further with the trunk thereafter than to place the same near the building, underneath a window therein, so that the lights burning inside shone through the window and directly upon the trunk where it was lodged. From the evidence of the plaintiff himself it appears that he left the trunk at the station under the conditions as stated, for his own personal convenience, because of the fact of his intention to take passage on defendant's train on the following morning for Malone.

It is claimed by the plaintiff that the defendant is guilty of gross negligence, in that it did not cause the trunk to be placed inside of the railroad station or in some other safe place, thus preventing during the night the abstraction of plaintiff's wearing apparel therefrom and his loss thereof. To sustain this position, the plaintiff cites the following cases: Gordon v. Railroad Co., 40 Barb. 546; Buffett v. Railroad Co., 40 N. Y. 168; Edgerton v. Railroad Co., 39 N. Y. 227.

I find nothing upon examination of those cases that applies to the question involved in this appeal. The questions passed upon there are as to the liability of the defendants for injuries received by

passengers while traveling in and upon public conveyances. The question involved here is whether the defendant, as a common carrier, is liable for the loss of plaintiff's goods, stolen from his trunk after the same had been gratuitously transported from one station to another upon defendant's road, such transportation having been procured by false representations and by deception practiced upon defendant's agents. In the case of Nolton v. Railroad Corp., 15 N. Y. 444, it was held that where a railroad company voluntarily undertakes to convey a passenger upon their road, whether with or without compensation, if such passenger be injured by culpable negligence of the agents of the company, the latter is liable; but, where the passenger is carried gratuitously, the liability of the carrier, for an injury caused by the gross negligence of its agents, arises, not from any implied contract, but from the violation of a duty imposed by circumstances. The difference between that case and this consists in the fact that the question involved in the former was for damages for injury to the person, and in the latter the loss of personal property. It is a well-settled rule of law that a liability exists for any injury to a passenger on a railroad train which occurs through the negligence of the company's agents. It is equally a well-settled rule of law that the liability of a railroad company for the baggage of a passenger on its road continues to be that of a common carrier until the passenger has had a reasonable opportunity to remove the same from its custody. This doctrine is fully discussed and laid down in Dininny v. Railroad Co., 49 N. Y. 546, and Maxwell v. Gerard, 84 Hun, 537, 32 N. Y. Supp. 849. The case of Michaels v. Railroad Co., reported in 30 N. Y. 564, holds that the duty of a common carrier begins when the goods are received into his custody for transportation, and ends when they are securely and safely carried and delivered to the owner. It does not mean by this, however, that a common carrier is under obligations to house, care for, or store the goods transported, except so far as is necessary to preserve them from immediate loss or damage other than through the act of God or of the public enemy.

The defendant in this case was under no obligation to place the trunk belonging to the plaintiff inside of its station or to exercise any further care or control over the same after it had been gratuitously transported from Loon Lake to Tupper Lake Junction, and safely landed upon the defendant's platform. It was the owner's duty at once and with diligence to remove the trunk, and so much time as he gave to his other business or pleasure, to the neglect of taking charge of the property and removing it from the custody of the carrier, cannot be allowed to him in estimating the time in which to take delivery. Hedges v. Railroad Co., 49 N. Y. 223; Graves v. Railroad Co. (decided by Justice Parker in appellate division, Third department, May 4, 1898) 51 N. Y. Supp. 636.

If any obligation or duty on the part of the defendant had existed beyond the time of the delivery of the trunk at Tupper Lake, it must be considered that such obligation or duty was fully removed by the instructions and directions of the plaintiff, given to the defendant's agent, as testified to by the witnesses Murray and Getman, namely: Pointing to the trunk then upon the platform, he said: "That is mine.

Leave it there, and I will be over for it in a short time." And, as testified to by Murray, plaintiff said, pointing to the trunk: "There is my trunk standing outside. I will be over after it in about fifteen. or twenty minutes; don't take it inside." By such acts on his part I am convinced that it was the intention of the plaintiff to remove his trunk from the railroad platform, and not require defendant's agents to exercise any further care over the same, and defendant was relieved entirely from any responsibility therefor.

I arrive at my conclusions in this case from these conditions and facts, namely: First. That plaintiff procured free transportation of his baggage from Loon Lake to Tupper Lake Junction, upon defendant's passenger train, through fraud upon defendant's agents. Second. He subsequently by like means obtained passage for himself between those stations upon a train of the defendant's not run for the purpose of carrying passengers. Third. After the arrival of the trunk at Tupper Lake Junction station, that plaintiff had ample opportunity to remove the same therefrom to his lodgings near by, and it was his duty thus to remove it. Fourth. Instead of removing the trunk as he should have done, he gave directions to defendant's agents that the trunk remain upon the platform until he should call for it, which, as was stated by him, would be in a very short time. Fifth. That there is no evidence in the case showing that the defendant was guilty of any negligence in not exercising more care concerning the property than was given to it while it remained in its possession, and that the plaintiff was guilty of negligence, under the evidence and all the circumstances of the case, in permitting his trunk to remain upon the platform during the night, after he had given notice to defendant's agent that he intended to remove it, and in not requesting defendant's agent to place the same within the station.

From these conclusions I am of the opinion that plaintiff ought not to recover, and the judgment rendered by the justice in this case should be reversed. Judgment reversed, with costs.